The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: October 24, 2022

**NO. S-1-SC-38989**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**NORMAN TYRELL CATES,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF HARDING COUNTY**
**Albert J. Mitchell, Jr., District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**ZAMORA, Justice.**

**I.     INTRODUCTION**

{1}     This matter comes to us on appeal of the district court's grant of Defendant Norman Tyrell Cates' petition for writ of habeas corpus. We consider whether the district court erred by concluding that Defendant, a serious youthful offender serving less than life imprisonment, is eligible to earn meritorious deductions under the Earned Meritorious Deductions Act (EMDA), NMSA 1978, § 33-2-34 (2015).[1] In *State v. Tafoya*, 2010-NMSC-019, ¶ 21, 148 N.M. 391, 237 P.3d 693, we held that the authority of a district court to sentence a serious youthful offender to less than life imprisonment "implies the discretion to award [a] serious youthful offender[] good-time credit eligibility within the existing framework of the EMDA, that is, zero, four, or thirty days good-time credit eligibility per month." In this opinion, we clarify that a serious youthful offender serving less than a term of life imprisonment only becomes eligible to earn meritorious deductions if expressly made eligible to do so by the sentencing court. We conclude that Defendant's original judgment and

---

[1]We note that the 2004 statute was in effect at sentencing, but the EMDA has not changed materially since then and, for ease of future reference and application, we cite the current version of the EMDA throughout this opinion.

sentence is silent as to his good-time eligibility, and he is not eligible to earn meritorious deductions. Accordingly, the district court that heard the habeas petition (the habeas court) erred by granting Defendant's petition and ordering that his judgment and sentence be amended to provide for this eligibility.

{2}     We reverse the district court's order and remand with instructions to vacate Defendant's amended judgment and sentence and to reinstate the original judgment and sentence.

## II.     BACKGROUND

{3}     In 2006, Defendant was convicted of first-degree murder, NMSA 1978, § 30-2-1(A) (1994), in the stabbing and beating death of his elderly neighbor, Lena Barrett. According to evidence adduced at trial, Defendant violently attacked the victim in her home while she was sleeping, stabbed her twenty-eight times, bludgeoned her, and choked her repeatedly. Defendant was seventeen years old at the time of the offense. The district court sentenced him as a serious youthful offender. *See* NMSA 1978, § 31-18-15.2(A) (1996) (defining a "'serious youthful offender'" as "an individual fifteen to eighteen years of age who is charged with and indicted or bound over for trial for first degree murder"). The parties agree that the district court sentenced Defendant to less than life imprisonment, as allowed by statute, NMSA 1978, § 31-18-15.3(D) (1993). Defendant was given a term of thirty

years of incarceration followed by five years of parole. The parties dispute whether Defendant's sentence made him eligible to earn meritorious deductions.

{4} During Defendant's sentencing hearing, the district court accepted proffers and heard statements regarding Defendant and his offense. Defense counsel requested a sentence of eighteen to twenty years, "with a recommendation of treatment accompanying the judgment and sentence," but did not request that Defendant be made eligible for meritorious deductions. The State requested a sentence of life. After commenting on the evident brutality and senseless nature of the murder, the district court announced an intent to sentence Defendant to "the maximum penalty of life in prison." Notwithstanding this verbally expressed intent, the district court entered a written judgment and sentence providing that Defendant would be incarcerated for a fixed-term sentence of thirty years. During the sentencing hearing, the court also expressed an intent to "permit participation in therapeutic amenities during the term of incarceration." However, the court did not reference the EMDA, and Defendant's judgment and sentence is silent as to his eligibility to earn meritorious deductions.

{5} The parties do not explain the discrepancy between the sentencing court's oral pronouncement to give a life sentence and its written judgment and sentence giving a thirty-year term sentence. The record fails to reflect, for example, whether the court

decided to reduce Defendant's sentence before issuing the written judgment and sentence, whether any error was made in preparing the document, or whether there is some other explanation for the discrepancy.

{6} Fourteen years after his sentencing hearing, Defendant filed a habeas petition in the district court seeking to clarify his eligibility to earn meritorious deductions. During his term of incarceration, Defendant has engaged in therapeutic and educational programming, including passing his high school equivalency exam and speaking at community outreach events for at-risk youth. Although the New Mexico Corrections Department (NMCD) kept track of Defendant's participation in these programs, Defendant learned that NMCD was not awarding him good time against his sentence for these activities.

{7} In his amended habeas petition, Defendant contended that NMCD had wrongly concluded that he was ineligible to earn meritorious deductions because he was not serving a life sentence. *See* § 33-2-34(G) ("The provisions of [the EMDA] shall not be interpreted as providing eligibility to earn meritorious deductions from a sentence of life imprisonment or a sentence of life imprisonment without possibility of release or parole."). Defendant further argued that, since his judgment and sentence was silent as to his eligibility to earn meritorious deductions, the sentencing court had not expressly limited his good-time eligibility. Because first-

4

degree murder is not listed as a serious violent offense in the EMDA, Defendant reasoned that his crime must be designated a nonviolent offense under Section 33-2-34(L)(3), making him eligible for up to thirty days of deductions per month of time served under Section 33-2-34(A)(2).

{8}     Although the State stipulated that Defendant was not serving a life sentence, it nevertheless opposed habeas relief. The State argued that Defendant was not eligible to earn meritorious deductions because the sentencing court had not affirmatively exercised its discretion to grant Defendant eligibility to earn deductions.

{9}     The district court held a hearing on Defendant's habeas petition and, after hearing arguments, partially granted the petition. Relying on *Tafoya*, the court concluded that a serious youthful offender sentenced to less than life imprisonment is eligible to earn meritorious deductions and must be considered to have committed a "serious violent offense" under Section 33-2-34(L)(4). The court rejected the State's contention that "silence in the [j]udgment and [s]entence regarding good-time equates to zero days per month credit," and rejected Defendant's contention that such silence "equates to thirty . . . days per month." The court further reasoned that "not including first degree murder as a serious violent offen[s]e or discretionary

serious violent offense would lead to a nonsensical result" in light of *Tafoya*, 2010-NMSC-019.

{10} Accordingly, the habeas court determined that Defendant's judgment and sentence rendered him eligible to earn meritorious deductions of up to four days per month. The court also concluded that Defendant was eligible to earn lump-sum credits as provided by Section 33-2-34(D) and (E). The court ordered that Defendant's judgment and sentence be amended to conform to this legal conclusion.

{11} The State timely filed a notice of appeal. We have jurisdiction over this appeal from a grant of a petition for writ of habeas corpus under Rule 12-102(A)(3) NMRA.

**III.    STANDARD OF REVIEW**

{12} We consider whether the district court correctly concluded that Defendant is eligible to earn meritorious deductions within the framework of the EMDA. This is a question of law that we review de novo. *Dominguez v. State*, 2015-NMSC-014, ¶ 9, 348 P.3d 183 (reiterating that, when reviewing a ruling on a petition for writ of habeas corpus involving questions of law or questions of mixed fact and law, a de novo review assures that this Court maintains its role as arbiter of the law).

**IV.    DISCUSSION**

{13} The authority of a district court to impose a sentence is derived from statute. *State v. Chadwick-McNally*, 2018-NMSC-018, ¶ 24, 414 P.3d 326. "This limitation

on judicial authority reflects the separation of powers notion that it is solely within the province of the Legislature to establish penalties for criminal behavior." *State v. Martinez*, 1998-NMSC-023, ¶ 12, 126 N.M. 39, 966 P.2d 747 (internal quotation marks and citation omitted). Yet a court's sentencing authority "is not a purely ministerial task," and courts possess inherent discretion to fashion an appropriate sentence within the framework of our sentencing laws. *Id.* ¶ 13.

{14}    Under the Criminal Sentencing Act, NMSA 1978, §§ 31-18-12 to -26 (1977, as amended through 2022), adults convicted of first-degree murder must be sentenced to either life imprisonment or life imprisonment without the possibility of parole. Section 31-18-14. Serious youthful offenders convicted of the same offense, however, may be sentenced to less than the mandatory life term for an adult. *See* § 31-18-15.3(D) (providing that a district court may sentence a serious youthful offender "to less than, but not exceeding, the mandatory term for an adult"); § 31-18-15.1(G) ("[W]hen the offender is a serious youthful offender or a youthful offender, the judge may reduce the sentence by more than one-third of the basic sentence."). In *Tafoya*, we determined that the authority to grant good-time eligibility to serious youthful offenders is in the district court's discretionary sentencing authority, which it may use to advance the rehabilitative purposes of both the EMDA and the juvenile sentencing scheme. 2010-NMSC-019, ¶¶ 20-21.

7

{15} Defendant asserts, and the habeas court concluded, that a serious youthful offender sentenced to less than life imprisonment is eligible to earn meritorious deductions under the EMDA, citing our opinion in *Tafoya*, 2010-NMSC-019. According to Defendant, this case presents "essentially the same issues of statutory construction" as *Tafoya* and thus should "yield the same result," that is, eligibility to earn up to four days of deductions per month of time served. Alternatively, Defendant contends that the sentencing court was unaware of the possibility that he might be eligible to receive meritorious deductions. Defendant thus suggests that the sentencing court abused its discretion because the judgment and sentence was based on a misunderstanding of law. Defendant also argues that the habeas court properly exercised its discretion in amending the judgment and sentence to provide for his good-time eligibility.

{16} We conclude that a serious youthful offender does not become eligible to earn meritorious deductions solely by virtue of being sentenced to less than life imprisonment. However, in exercising its discretion to sentence a serious youthful offender to less than the mandatory life sentence of an adult, a sentencing court may specify that the offender is eligible to earn deductions within the existing framework of the EMDA. *Tafoya*, 2010-NMSC-019, ¶ 21. The district court did not expressly exercise this discretion in sentencing Defendant; therefore, he is not eligible to earn

8

meritorious deductions. We further reject Defendant's assertion that the district court abused its discretion by not expressly addressing Defendant's good-time eligibility, and we explain that the habeas court did not have discretion to amend Defendant's judgment and sentence to provide for this eligibility.

**A.  A Serious Youthful Offender Is Eligible to Earn Meritorious Deductions Only if the Sentencing Court Expressly Confers Such Eligibility**

**1.  Overview of the EMDA, the Criminal Sentencing Act, and *Tafoya***

{17}    The EMDA is "a detailed set of guidelines for both the courts and the [NMCD] to administer in the ultimate determination of a prisoner's eligibility for good-time reductions from [the prisoner's] period of confinement." *State v. Rudolfo*, 2008-NMSC-036, ¶ 35, 144 N.M. 305, 187 P.3d 170. Under the EMDA, eligible prisoners may earn deductions of either a maximum of four or thirty days per month, "upon recommendation by the classification supervisor, based upon the prisoner's active participation in approved programs and the quality of the prisoner's participation in those approved programs." Section 33-2-34(A), (B). A prisoner confined for a "nonviolent offense" is eligible to earn deductions of up to thirty days per month during the prisoner's term of incarceration. Section 33-2-34(A)(2). A prisoner confined for a "serious violent offense" is eligible to earn up to four days of deductions per month served. Section 33-2-34(A)(1).

9

{18}    The EMDA enumerates fourteen offenses as per se serious violent offenses, including second-degree murder and voluntary manslaughter. Section 33-2-34(L)(4)(a)-(n). Another fifteen offenses may be designated by the sentencing court as serious violent offenses "when the nature of the offense and the resulting harm are such that the court judges the crime to be a serious violent offense." Section 33-2-34(L)(4)(o). The statute defines nonviolent offenses residually as "any offense other than a serious violent offense." Section 33-2-34(L)(3).

{19}    "Courts generally have a limited role in administering the EMDA." *Tafoya*, 2010-NMSC-019, ¶ 8 (internal quotation marks and citation omitted). A sentencing court typically must only determine "which offenses are to be considered 'serious violent offenses' for good time purposes." *Rudolfo,* 2008-NMSC-036, ¶ 37. After sentencing, "the deduction of good time credits from an inmate's sentence is a discretionary matter entrusted not to the courts but to the administrators of the [NMCD] or the county jails." *State v. Aqui*, 1986-NMSC-048, ¶ 9, 104 N.M. 345, 721 P.2d 771, *holding limited by Brooks v. Shanks*, 1994-NMSC-113, ¶¶ 8-9, 118 N.M. 716, 885 P.2d 637. We have recognized that Section 33-2-34 and NMSA 1978, Section 33-2-36 (1999, amended 2006), pertaining to forfeiture of earned meritorious deductions, create a statutory entitlement for due process purposes, and a prisoner's meritorious deductions, once earned, may not "be subjected to a

10

forfeiture or termination . . . unless the appropriate procedures were followed." *Brooks*, 1994-NMSC-113, ¶ 10; *see also Miller v. Tafoya*, 2003-NMSC-025, ¶ 14, 134 N.M. 335, 76 P.3d 1092 ("The statutorily created right to good-time credit is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Therefore, before a prisoner may be deprived of good-time credits, he or she must be afforded due process." (citations omitted)). However, prisoners do not have an interest in erroneously granted or unearned meritorious deductions. *Tafoya,* 2010-NMSC-019, ¶ 27.

{20} A prisoner serving a life sentence is ineligible for, and cannot earn, meritorious deductions under the EMDA. Section 33-2-34(G). The Criminal Code defines first-degree murder as a capital felony, § 30-2-1, subject by the Criminal Sentencing Act to a mandatory life sentence when committed by an adult, § 31-18-14. Thus, an adult prisoner convicted of first-degree murder clearly would be ineligible to earn meritorious deductions according to the plain language of the EMDA. Section 33-2-34(G). Perhaps because of this, the offense of first-degree murder is not expressly addressed by the EMDA. *See Rudolfo*, 2008-NMSC-036, ¶ 38 ("The offense of first-degree murder is not only conspicuously missing from the offenses that can be considered 'serious violent offenses,' it is specifically dealt with

11

in Section 33-2-34(G), which precludes the award of any good time whatsoever for offenses carrying sentences of death or life imprisonment.").

{21} However, the Criminal Sentencing Act provides that a serious youthful offender convicted of first-degree murder may be sentenced to less than the mandatory life term of an adult. Section 31-18-15.3(D). If a serious youthful offender is sentenced to less than life imprisonment, as Defendant was here, the offender would not be excluded from eligibility to earn deductions under the plain language of Section 33-2-34(G). Further, because first-degree murder is not enumerated as either a per se or discretionary serious violent offense, an application of the plain language of the statute would result in first-degree murder being categorized as a nonviolent offense. Section 33-2-34(L)(3), (4).

{22} In *Tafoya,* 2010-NMSC-019, we considered this interplay between the EMDA and the serious youthful offender sentencing scheme in the context of a serious youthful offender who was expressly made eligible for meritorious deductions at sentencing. The defendant in *Tafoya*, a serious youthful offender, was sentenced to a term of less than life imprisonment. *Id.* ¶¶ 1, 4. The defendant's sentence expressly authorized NMCD to "award [the d]efendant good time credit in accordance with New Mexico law." *Id.* ¶ 4. Because NMCD interpreted this language to mean that the defendant was eligible for deductions of up to thirty days per month, the state

12

filed a motion to clarify the sentence. *Id.* Following a hearing, the district court clarified that the defendant was eligible to earn up to four days per month. *Id.* The defendant appealed, arguing that the EMDA granted him eligibility of up to thirty days and the district court erred in limiting his maximum eligibility. *Id.* ¶¶ 5, 22.

{23}     The question presented in *Tafoya* was whether the district court could limit the defendant's maximum good-time eligibility. *Id.* ¶¶ 1-2. The Court answered this question in the affirmative, concluding that the district court had discretion to specify the maximum amount of deductions for which the defendant would be eligible. *Id.* ¶ 2. The Court rejected the argument that the defendant was eligible to earn up to thirty days per month as technically a nonviolent offender. *Id.* ¶ 15. While noting that this interpretation was supported by the plain meaning of the statutory text, the Court stated that "[c]lassifying first degree murder by a serious youthful offender as a *per se* nonviolent offense is the sort of absurd result for which we forego applying the plain meaning test."[2] *Id.*

---

[2]In declining to follow the plain language of the statute, *Tafoya* departed with our past approach to interpreting the EMDA, as we have generally refused to construe an offense as a serious violent offense unless it is specifically enumerated as such in the EMDA. *See, e.g.*, *State v. McDonald*, 2004-NMSC-033, ¶¶ 20-23, 136 N.M. 417, 99 P.3d 667 (concluding that conspiracy to commit armed robbery is not an enumerated serious violent offense and thus falls within the definition of a nonviolent offense for purposes of the EMDA); *State v. Bennett*, 2003-NMCA-147, ¶¶ 7-13, 134 N.M. 705, 82 P.3d 72 (rejecting the state's contention that the Legislature's failure to define aggravated battery with a deadly weapon on a

{24} The *Tafoya* Court also rejected the State's argument that Section 33-2-34(G) categorically precluded the defendant from earning deductions, explaining that the subsection "speaks in terms of sentence length rather than the crime for which the sentence is imposed." *Tafoya*, 2010-NMSC-019, ¶ 13. The *Tafoya* Court, *id*., distinguished our earlier opinion in *Rudolfo*, 2008-NMSC-036, ¶ 38, which stated that the EMDA "precludes the award of any good time whatsoever for offenses carrying sentences of death or life imprisonment." The Court explained that categorical preclusion was limited to adults who must serve a mandatory life sentence and that Section 33-2-34(G) did not preclude an award of eligibility to a serious youthful offender who is sentenced to less than life imprisonment. *Tafoya*, 2010-NMSC-019, ¶¶ 13, 15.

{25} "Reading the EMDA and the serious youthful offender sentencing statutes in harmony," and noting the rehabilitative policies expressed by both enactments, the *Tafoya* Court reasoned that "the discretion granted to judges in sentencing serious

household member as a serious violent offense was a "mistake" and reversing the district court's limitation on defendant's eligibility to earn meritorious deductions). Nevertheless, we agree with *Tafoya* that classifying first-degree murder as a nonviolent offense would be absurd. *Tafoya*, 2010-NMSC-019, ¶ 15. We view the omission of first-degree murder from the plain language of the EMDA as a confirmation of an intent to exclude the offense of first-degree murder from that act, § 33-2-34(G), and not as expressing an intent to classify first-degree murder as a nonviolent offense.

14

youthful offenders would be severely curtailed if serious youthful offenders were strictly prohibited from earning good time credits during imprisonment." *Id.* ¶ 20. The Court also noted its statement in *State v. Trujillo*, 2002-NMSC-005, ¶ 66, 131 N.M. 709, 42 P.3d 814, that a sentence authorizing a serious youthful offender to earn meritorious deductions was "'authorized by statute.'" *Tafoya*, 2010-NMSC-019, ¶ 17 (quoting *Trujillo*, 2002-NMSC-005, ¶ 66). The Court construed the Legislature's silence on the issue since *Trujillo* as indicative of legislative acquiescence. *Tafoya*, 2010-NMSC-019, ¶ 17.

{26}    The *Tafoya* Court thus held that

> the explicit [l]egislative grant of discretion to the district court in sentencing [the d]efendant as a serious youthful offender implies the discretion to award serious youthful offenders good time credit eligibility within the existing framework of the EMDA, that is, zero, four, or thirty days good time credit eligibility per month.

*Id.* ¶ 21. Critically, the Court did not rely on the EMDA for this holding; it

> underscore[d] that this discretion is based not on the district court's defining first degree murder committed by a serious youthful offender as a serious violent offense or a nonviolent offense for purposes of the EMDA, but rather on the discretion our Legislature granted sentencing courts in imposing a sentence that will best contribute to the rehabilitation of the child.

*Id.* In other words, the Court determined that the authority to grant good-time eligibility to serious youthful offenders is an incident of the district court's discretionary sentencing authority, which it may use to advance the rehabilitative

15

purposes of both the EMDA and the juvenile sentencing scheme. *Id.* ¶¶ 20-21; *see also Martinez*, 1998-NMSC-023, ¶ 13 (recognizing that "courts inherently possess ample right to exercise reasonable, that is, judicial, discretion to enable them to wisely exert their authority" in sentencing a defendant (internal quotation marks and citation omitted)).

{27}     *Tafoya* also explicitly declined to define first-degree murder as either a nonviolent or serious violent offense, further underscoring that the authority to make a serious youthful offender eligible to earn meritorious deductions does not emanate from the EMDA. 2010-NMSC-019, ¶¶ 15, 21. Indeed, in affirming the district court, the Court expressly relied upon the fact that "the district court did not define the crime which [the d]efendant committed as a serious violent offense; rather, the district court determined that [the d]efendant should be eligible to earn good time credits during his imprisonment as an exercise of discretion to increase [the d]efendant's chance of rehabilitation." *Id*. ¶ 22.

**2.     A serious youthful offender's eligibility to earn meritorious deductions may be authorized only through an express exercise of discretion by the sentencing court**

{28}     Defendant contends, and the habeas court concluded, that *Tafoya* recognizes that a serious youthful offender serving less than a life sentence is eligible to earn meritorious deductions under the EMDA. But *Tafoya* does not support this

contention. To the contrary, the *Tafoya* Court made clear that a court possesses the discretionary authority to award a serious youthful offender "zero . . . good time credit eligibility per month." 2010-NMSC-019, ¶ 21. Yet there is no category of offense under the EMDA that addresses the award of zero meritorious deductions, reaffirming that the Court recognized that the decision to award a serious youthful offender good-time eligibility is fully discretionary and does not arise from the EMDA itself. The defendant in *Tafoya* was eligible to earn up to four days per month of meritorious deductions because the sentencing court in that case expressly exercised its discretion to award the defendant this eligibility. *Id.* ¶ 4. *Tafoya* does not address the situation presented here, where the sentencing court was silent as to whether Defendant would be eligible to earn meritorious deductions.

{29}     Thus, we must consider whether a judgment and sentence providing that a serious youthful offender will serve less than life imprisonment but not expressly stating that the offender will be eligible to earn meritorious deductions, nevertheless makes the offender eligible to earn deductions pursuant to the EMDA and the Criminal Sentencing Act. We conclude that it does not.

{30}     Neither the EMDA nor the Criminal Sentencing Act expresses an intent to make a serious youthful offender sentenced to less than life imprisonment eligible to earn meritorious deductions in the absence of the district court's affirmative

17

authorization of this good-time eligibility. Under the Criminal Sentencing Act, a serious youthful offender convicted of first-degree murder is, by statutory default, subject to a life sentence for his or her capital offense. Section 31-18-14; § 31-18-15.3(D); *see also State v. Jones*, 2010-NMSC-012, ¶ 11, 148 N.M. 1, 229 P.3d 474 (noting that serious youthful offenders "are automatically sentenced as adults if convicted"). If given that default life sentence, a serious youthful offender would be expressly precluded from earning deductions under the plain language of the EMDA. Section 33-2-34(G).

{31}    If not given the statutory default life sentence, the Legislature has provided that "[t]he court may sentence the offender to less than, but not exceeding, the mandatory term for an adult." Section 31-18-15.3(D). The Legislature has not detailed the exact amount by which a serious youthful offender's sentence may be reduced from this otherwise life sentence. *See* § 31-18-15.1(G) ("[W]hen the offender is a serious youthful offender or a youthful offender, the judge may reduce the sentence by more than one-third of the basic sentence."). Thus, a sentencing court is given discretion to fashion an appropriate sentence for a serious youthful offender within the existing framework of our sentencing laws. *Cf. Martinez*, 1998-NMSC-023, ¶ 14 (recognizing a court's "inherent discretionary authority" to award presentence confinement credits as long as the credit "does not lessen the penalty

intended by the Legislature, or otherwise frustrate the Legislature's constitutional function of establishing criminal penalties").

{32} The Legislature's decision to grant discretion to district courts in sentencing serious youthful offenders is grounded in the unique considerations that arise in the context of juvenile sentencing. *Cf. Ira v. Janecka*, 2018-NMSC-027, ¶¶ 20-23, 419 P.3d 161 (identifying "three themes regarding the constitutionality of juvenile sentencing" and observing that juveniles may have more potential for reform than adults). However, unlike other juvenile defendants, a serious youthful offender is not afforded the protections of the Delinquency Act, NMSA 1978, §§ 32A-2-1 to -33 (1993, as amended through 2021). Section 32A-2-3(H). Thus, the Legislature has expressed an intent to distinguish serious youthful offenders from other juvenile offenders, likely in view of the severity of the serious youthful offender's capital offense. *Cf. State v. Ortiz*, 2021-NMSC-029, ¶¶ 37, 39, 498 P.3d 264 (rejecting an equal protection claim for a serious youthful offender's exclusion from the protections of the Delinquency Act, including an amenability hearing, because of the serious nature of first-degree, felony murder).

{33} The EMDA mirrors this distinction between capital and noncapital offenses. Section 33-2-34(G). We read Section 33-2-34(G) and the omission of first-degree murder from the offenses enumerated by the EMDA as expressing the Legislature's

19

intent to exclude prisoners convicted of capital offenses from the benefit of the statutory provisions. Even before the 1999 repeal and reenactment of Section 33-2-34, which added Subsection (G)'s exclusion of life sentences, our meritorious deductions statute applied only to prisoners convicted of noncapital offenses. *See* 1999 N.M. Laws, ch. 238, § 1; *Compton v. Lytle*, 2003-NMSC-031, ¶¶ 19-20, 134 N.M. 586, 81 P.3d 39 ("Because Section 33-2-34 describes the meritorious deductions as pertaining to 'basic' and 'enhanced' sentences, and the relevant provisions of the Criminal Sentencing Act only describe noncapital felonies as having basic and enhanced sentences, we conclude that the Legislature intended that only inmates convicted of noncapital crimes receive the benefit of good-time credits."). Subsection (G) merely clarified and continued this intent to exclude prisoners serving life sentences for their capital offenses. *See Compton*, 2003-NMSC-031, ¶ 21 ("Having removed the language that implicitly tied meritorious deductions to noncapital sentences, it is understandable that the Legislature would have wanted to add other language *clarifying* that the section, as amended, 'shall not be interpreted as providing eligibility to earn meritorious deductions from a sentence of life imprisonment or a sentence of death.'" (emphasis added) (quoting Section 33-2-34(G))). Thus, while we agree with *Tafoya*, 2010-NMSC-019, ¶ 15, that Section 33-2-34(G), by its language, does not *preclude* a serious youthful offender sentenced

20

to less than life imprisonment from good-time eligibility, we nevertheless view Section 33-2-34(G) as advising against our *presuming* that such an offender is eligible.

{34}   A serious youthful offender's life sentence may be reduced only through an express exercise of discretion by the sentencing court. Section 31-18-15.3(D). Likewise, we conclude that a serious youthful offender's eligibility to earn meritorious deductions may be authorized only through an express exercise of discretion by the sentencing court. Accordingly, when a serious youthful offender's judgment and sentence says nothing about the offender's good-time eligibility, the judgment and sentence should be understood to have not made the offender eligible to earn meritorious deductions. As stated in *Tafoya*, 2010-NMSC-019, ¶21, the serious youthful offender in this scenario has been granted "zero . . . good time credit eligibility." Because Defendant's judgment and sentence was silent as to his good-time eligibility, he was not eligible to earn meritorious deductions. The habeas court erred by concluding otherwise.

**B.   The District Court Did Not Abuse Its Discretion in Sentencing Defendant Without Eligibility to Earn Meritorious Deductions**

{35}   Defendant also argues that the sentencing court abused its discretion because the court wrongly assumed that it could not authorize good-time eligibility. Defendant asserts that the district court did not "have the benefit of this Court's

21

*Tafoya* analysis" when he was sentenced in 2006, and thus was unaware of the possibility that an offender in Defendant's position might be eligible to earn meritorious deductions. Defendant states, "Without the guidance of *Tafoya*, the sentencing court misunderstood the law and failed to give due consideration to [Defendant's] status as a [serious] youthful offender."

{36} As we have explained, *Tafoya* stands for the proposition that a district court may, in its discretion, authorize a serious youthful offender to earn meritorious deductions. But the sentencing court is not required to explicitly disavow this sentencing possibility. *See State v. Ferry*, 2018-NMSC-004, ¶ 2, 409 P.3d 918 ("Discretion is the authority of a district court judge to select among multiple correct outcomes."); § 31-18-15.3(D) ("The court *may* sentence the offender to less than, but not exceeding, the mandatory term for an adult." (emphasis added)). The district court did not abuse its discretion by not expressly addressing Defendant's good-time eligibility in its judgment and sentence.

{37} Further, we will not speculate about what rules of law the sentencing court considered at the time of sentencing. We cannot say, as a matter of law, that the district court in 2006 was unaware of the possibility that it could, in its discretion, make Defendant eligible for meritorious deductions. As noted in *Tafoya*, 2010-NMSC-019, ¶ 17, we recognized in 2002 that a judgment and sentence providing

22

that a serious youthful offender could earn meritorious deductions was "authorized by statute." *Trujillo*, 2002-NMSC-005, ¶ 66. Indeed, the sentencing courts in *Trujillo* and *Tafoya* expressly awarded good-time eligibility to the serious youthful offenders in those cases before we addressed the issue. *Trujillo*, 2002-NMSC-005, ¶ 7; *Tafoya*, 2010-NMSC-019, ¶ 4. Moreover, any factual dispute over the extent of the sentencing court's legal knowledge or understanding was not preserved, and we are in no position to rule on the issue. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked.").

{38}     Finally, Defendant's contention that the sentencing court did not give due consideration to his status as a serious youthful offender is directly refuted by the record on appeal, which demonstrates that the court was well apprised of Defendant's juvenile status and expressly considered his age in determining his sentence.

**C.     The Habeas Court Did Not Have Discretion to Amend Defendant's Lawful Judgment and Sentence**

{39}     Defendant suggests that, in partially granting his petition for habeas corpus, the habeas court was properly exercising the discretion afforded to it under *Tafoya*. However, *Tafoya* does not recognize that a court has discretion to amend a final judgment and sentence on a petition for habeas corpus. As the habeas court itself

23

clarified with the parties, and Defendant conceded, the court did not have authority to change the decision of the sentencing court; instead, it was seeking to determine the legal effect of the sentence that was already imposed.

{40} Rule 5-802 NMRA permits a prisoner to file a petition for a determination that

> [Their] custody or restraint is, or will be, in violation of the constitution or laws of the State of New Mexico or of the United States; that the district court was without jurisdiction to impose such sentence; or that the sentence was illegal or in excess of the maximum authorized by law or is otherwise subject to collateral attack.

Rule 5-802(A). We have determined that Defendant's judgment and sentence was statutorily authorized and made within the sentencing court's sound discretion; thus, the habeas court had no basis to amend the judgment and sentence by way of habeas corpus.

{41} Defendant does not cite any other authority that would allow the court to amend his judgment and sentence in these proceedings. Nor are we aware of any authority that would allow it to do so. Our sentencing scheme requires a district court to fashion an appropriate sentence at a sentencing hearing held within a reasonable time after the adjudication of guilt. Rule 5-701(B), (C) NMRA. Once finalized, legal judgments and sentences are generally subject to amendment only by motions to reduce the sentence, Rule 5-801 NMRA, or motions to correct clerical errors, Rule 5-113 NMRA. Neither party suggests that Rule 5-801 or Rule 5-113 is applicable

here. The district court's order, if made under Rule 5-801, also would conflict with the strict time limits set by Rule 5-801(A).

{42} As the habeas court had no authority to amend Defendant's legal judgment and sentence, it erred by ordering that the judgment and sentence be amended.

**V.  CONCLUSION**

{43} We conclude that Defendant's sentence for a term of years, rather than life, for first-degree murder as a serious youthful offender did not automatically make him eligible to earn meritorious deductions. In order for a serious youthful offender convicted of first-degree murder to be eligible to earn meritorious deductions, the sentencing court must explicitly grant such eligibility. The sentencing court made no such provision here, and the habeas court erred by ordering that Defendant's judgment and sentence be amended to afford him good-time eligibility. We therefore reverse the order of the district court granting Defendant's habeas petition. We remand this matter to the district court with instructions to vacate the amended judgment and sentence and to reinstate the original judgment and sentence.

{44}  **IT IS SO ORDERED.**

_____

**BRIANA H. ZAMORA, Justice**

25

**WE CONCUR:**

_____
**C. SHANNON BACON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**DAVID K. THOMSON, Justice**

_____
**JULIE J. VARGAS, Justice**