The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: July 14, 2025

**NO. S-1-SC-39880**

**STATE OF NEW MEXICO and**
**JAMES YATES, Warden,**

Plaintiffs-Appellants,

v.

**STEVE SWAYNE,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
Kathleen McGarry Ellenwood, District Judge

Raúl Torrez, Attorney General
Aletheia V.P. Allen, Solicitor General
Santa Fe, NM

for Appellants

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**ZAMORA, Justice.**

{1}     The State appeals from the district court's grant of a writ of habeas corpus that awarded Defendant-Appellee Steve Swayne (Defendant) four months' meritorious deduction from his prison sentence. The New Mexico Corrections Department (NMCD) granted Defendant a four-month lump sum award (LSA) for earning his first associate's degree while incarcerated, but then denied Defendant a second four-month LSA for earning a second associate's degree. The second LSA was denied pursuant to a prison rule that prohibited the NMCD from awarding a second four-month LSA when a prisoner earns a second or subsequent associate's degree. This rule is consistent with a broader NMCD rule that permits only one LSA per degree level for any educational degree earned while incarcerated, from high school equivalency through graduate degrees.

{2}     In the habeas proceedings below, the district court determined that the Earned Meritorious Deductions Act (EMDA), NMSA 1978, Section 33-2-34 (2015, amended 2025), which authorizes the NMCD to award meritorious deductions from an inmate's sentence upon satisfaction of specified conditions, required the NMCD to award a separate four-month LSA for each associate's degree earned, regardless of whether the prisoner had previously attained that degree level while incarcerated.

The district court found that the NMCD rule was "arbitrary and capricious." On appeal, the State argues that the district court erred because the rule was rationally related to the statute and, secondarily, that Defendant had no liberty interest in the LSA.

{3}     Consistent with our holding in *State v. Houidobre*, 2025-NMSC-007, ¶ 27, 563 P.3d 890, we reject the State's argument that Defendant had no liberty interest in eligibility for the LSA. However, we further hold that the NMCD rule permitting only one LSA per degree level is not arbitrary and irrational, but is reasonably related to the legitimate penological interests of the EMDA. Therefore, we reverse.

## I.      BACKGROUND

{4}     Defendant earned two associate's degrees while incarcerated. He first earned an Associate of Arts in Liberal Arts/University Studies, and the NMCD granted him a four-month LSA for that achievement. Six months later, Defendant earned an Associate of Applied Science in Business Administration. Per the NMCD rules, "[a]n inmate may be awarded only one (1) [LSA] for receiving an [a]ssociate's degree. Subsequent associate['s] degrees are not eligible for an LSA." NMCD CD-082801(B)(3)(h) (2013). Thus, even though Defendant was initially recommended to receive an LSA for his second associate's degree, the NMCD ultimately denied

the LSA because Defendant had already received an LSA for his first associate's degree.

{5}     Defendant challenged the denial of his second LSA in a pro se habeas petition to the district court, arguing that he was entitled to the LSA under the EMDA. The district court appointed the Law Offices of the Public Defender to represent Defendant in the habeas proceedings. Through counsel, Defendant filed an amended petition arguing that the EMDA creates an entitlement to an LSA when a prisoner earns an associate's degree in compliance with other statutory criteria. Further, Defendant argued, the NMCD rule limiting educational LSAs to one per degree level was "arbitrary, irrational, and so remote from encouraging inmate cooperation and good behavior that it cannot be sustained." Defendant argued the rule failed to meet the standard set by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78, 89 (1987), *superseded by statute on other grounds as stated in Butler v. Porter*, 999 F.3d 287, 295 (5th Cir. 2021), which requires that a prison rule be "reasonably related to [a] legitimate penological interest[]."

{6}     The State responded that the EMDA is a completely discretionary scheme and prisoners therefore have no liberty interest in LSAs. The State further argued that, even if Defendant did have a liberty interest in the LSA, the NMCD acted properly in denying his requested LSA because the rule prohibiting the NMCD from awarding

3

a second LSA when a prisoner earns a second or subsequent associate's degree is rationally related to the State's interest in ensuring good behavior and cooperation among inmates. The State argued that "the [rule] encourages inmates to seek higher, more challenging levels of education, rather than amassing a slew of [associate's degrees]. This is rational, as employers routinely consider one's highest level of education, rather than simply counting the number of degrees."

{7}     After an evidentiary hearing at which the district court heard testimony from three prison officials involved with the provision of educational LSAs, the district court issued an order granting the petition and awarding Defendant the four-month LSA for his second associate's degree. In granting the relief, the district court found that Defendant had a liberty interest in the LSA and that the NMCD rule was more restrictive than the EMDA statute by limiting the number of LSAs to one per degree. The district court further found "[t]he purpose of awarding the [LSA] for educational achievement is not only to create an incentive for an inmate to exhibit good behavior, but more importantly it is to prepare an inmate to re[e]nter his community with the tools necessary to become a productive citizen." The district court concluded that "[t]he denial of the [LSA], and the [NMCD rule] that supported the denial, is contrary to the statute and the intent of the statute." Therefore, the district court concluded that "the [rule] which denied [Defendant] the lump sum credit for his

4

[a]ssociate[']s [d]egree in Business Administration is arbitrary and capricious" under the standard set by *Turner*.[1]

{8}     The State appealed on the same grounds it argued before the district court. We reverse.

## II.     DISCUSSION

### A.     Standard of Review

{9}     On appellate review of a habeas corpus determination, we review the district court's findings of fact for substantial evidence and its legal determinations de novo. *Cordova v. LeMaster*, 2004-NMSC-026, ¶ 10, 136 N.M. 217, 96 P.3d 778. "The statutorily created right to good-time credit is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Miller v. Tafoya*, 2003-NMSC-025, ¶ 14, 134 N.M. 335, 76 P.3d 1092. "Claims

---

[1]The district court's invocation of the phrase "arbitrary and capricious" appears to have been in error. The *Turner* Court distinguished between two different constitutional attacks on prison rules: (1) an argument that the rule is facially unconstitutional and (2) an argument that the corrections department applied the rule in an unconstitutional manner. 482 U.S. at 89-91, 99-100. As to the first argument, a prison rule may fail constitutional scrutiny if, among other reasons, "the logical connection between the [rule] and the [legitimate governmental interest] is so remote as to render the [rule] arbitrary or irrational." *Id.* at 89-90. As to the second, the application of the rule will be found constitutionally deficient if it is done "in an arbitrary and capricious manner." *Id.* at 100. The case before us implicates only the first argument.

involving the denial of procedural due process are questions of law, which we review de novo." *Cordova*, 2004-NMSC-026, ¶ 10. Likewise, questions of statutory construction are reviewed de novo. *State v. Thompson*, 2022-NMSC-023, ¶ 17, 521 P.3d 64.

{10} Our role in reviewing NMCD's implementation of the EMDA is limited, in recognition of the separation of powers. *See State v. Tafoya*, 2010-NMSC-019, ¶ 25, 148 N.M. 391, 237 P.3d 693 (recognizing that it is the executive branch's role to administer the EMDA). Once an inmate has been sentenced, "the deduction of good time credits from an inmate's sentence is a discretionary matter entrusted not to the courts but to the administrators of the NMCD." *State v. Cates*, 2023-NMSC-001, ¶ 19, 523 P.3d 570 (text only)[2] (citations omitted); *see also State v. Rudolfo*, 2008-NMSC-036, ¶ 37, 144 N.M. 305, 187 P.3d 170 (explaining that once the sentencing court has sentenced a defendant, "[t]he remaining computations [of good time] are assigned to the corrections department by the comprehensive statutory scheme set out in the EMDA and should not be addressed further by the court in the judgment or otherwise"). Pursuant to the authority delegated to the NMCD under the statute,

---

[2]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

prison officials have the discretion to "deem [a] prisoner ineligible [for an LSA] under one of the statutory disqualifications or a promulgated rule consistent with NMCD authority." *Houidobre*, 2025-NMSC-007, ¶ 25. At the same time, "courts are not wallflowers or potted plants." *Id.* ¶ 28 (text only) (citation omitted). For example, an NMCD rule that results in a deprivation of liberty that is unsupported "by any evidence," or where "the procedures are followed but policies, statutes, or regulations are violated," is a due process violation and we may grant relief to the prisoner on habeas review. *Id.* (internal quotation marks and citation omitted).

{11} Consistent with these principles, when a prison rule implicates an inmate's constitutional rights, we apply a deferential standard of review: we ask whether the challenged rule "is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *see also Cordova*, 2004-NMSC-026, ¶¶ 12, 15-16 (applying the *Turner* standard to affirm a district court's ruling that a prison transfer was not retaliatory because it "was reasonably related to legitimate penological interests"). As *Turner* instructs, "such a standard is necessary if prison administrators, and not the courts, are to make the difficult judgments concerning institutional operations." 482 U.S. at 89 (text only) (citation omitted). "We recognize that running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, and so for the moment we leave to the NMCD's expertise,

7

guided by our case law, the implementation of appropriate procedures." *Houidobre*, 2025-NMSC-007, ¶ 27 (text only) (citation omitted). If the rule in question is reasonably related to the asserted penological interests, and the interests are legitimate and neutral, then it is a valid rule and will not be overturned on appeal. *Turner*, 482 U.S. at 89-90.

**B.     The Statutory and Regulatory Scheme Governing LSAs**

{12}     The NMCD has the exclusive statutory authority, without judicial approval, to award prisoners earned meritorious deductions, commonly referred to as "good time" credits, for good behavior or participation in educational or other rehabilitative programs. *Compare* Section 33-2-34(A)-(B), (D) (2015) (explaining NMCD authority surrounding earned meritorious deductions), *with* NMSA 1978, § 33-3-9(A) (1995) (stating the jail administrator may only award good time "with the approval of the committing judge or presiding judge"). In short, the NMCD has the authority to reduce a prisoner's court-ordered sentence. *See* 6 Wayne R. LaFave et al., *Criminal Procedure* § 26.2(c), at 920-21 (4th ed. 2015) ("Regardless of the availability of parole, executive agencies may reduce sentences through 'good-time,' 'earned time,' or 'early release' credit.").

{13}     The EMDA establishes several types of meritorious deductions, or "good time" credits, that NMCD may award to prisoners who meet certain criteria. Section

33-2-34. In addition to meritorious deductions for good behavior, prisoners *may* earn good time in the form of an LSA for successfully completing programming, achieving educational degrees, or engaging in extraordinary meritorious acts. *See* § 33-2-34(A)-(C) (2015) (setting forth standards for meritorious deductions for good behavior); § 33-2-34(D) (2015) (setting forth standards for LSAs); § 33-2-34(E) (2015) (providing that LSAs "*may* be awarded in addition to the meritorious deductions" allowed for good behavior (emphasis added)).

{14} Specifically, the EMDA sets forth the following categories of eligibility for LSAs as follows:

> (1) for successfully completing an approved vocational, substance abuse or mental health program, one month; . . .
>
> (2) for earning a high school equivalency credential, three months;
>
> (3) for earning an associate's degree, four months;
>
> (4) for earning a bachelor's degree, five months;
>
> (5) for earning a graduate qualification, five months; and
>
> (6) for engaging in a heroic act of saving life or property, engaging in extraordinary conduct for the benefit of the state or the public that is at great expense or risk to or involves great effort on the part of the prisoner . . . [in an amount to be] determined by the . . . corrections department.

9

Section 33-2-34(D) (2015).[3]

{15} The LSAs in Subsection D "*may* be awarded by the NMCD in addition to" other meritorious deductions. Section 33-2-34(E) (2015) (emphasis added); *see State v. Donahoo*, 2006-NMCA-147, ¶ 7, 140 N.M. 788, 149 P.3d 104 (stating "the word 'may' is permissive"). Thus, in addition to Defendant being eligible to earn "up to a maximum of thirty days per month of time served" he would also be eligible to receive additional credit for a lump sum. *See* § 33-2-34(A)(2) (2015).

{16} The only express legislatively imposed limitations on LSAs are that they "shall not exceed one year per award and shall not exceed a total of one year for all [LSAs] awarded in any consecutive twelve-month period." Section 33-2-34(E). Additionally, inmates are ineligible to receive any form of meritorious deduction if the prisoner "disobeys an order to perform labor . . . is in disciplinary segregation . . . is not an active participant in programs," or is serving a life sentence. Section 33-2-34(F)-(G) (2015).

---

[3]We note that it is reasonable to interpret the use of "a" and "an" as an indication of the Legislature's intent to award one LSA for the single completion of a level of education listed under Section 33-2-34(D) (2015), rather than intending to grant multiple LSAs when the same level of education is completed multiple times. *See State v. Olsson*, 2014-NMSC-012, ¶ 18, 324 P.3d 1230 ("The plain language of the statute is the primary indicator of legislative intent.").

{17}    The Legislature expressly delegated rule-making authority to the NMCD to implement the EMDA. *See* NMSA 1978, § 33-2-1 (1977) ("The [NMCD] shall adopt such rules concerning all prisoners committed to the penitentiary as shall best accomplish their confinement and rehabilitation."); *see also* Section 33-2-34(H) (2015) ("The corrections department shall promulgate rules to implement the provisions of this section, and the rules shall be matters of public record."). Prior to 2013, NMCD rules allowed prisoners to "receive more than one LSA for earning an associate's degree; bachelor's degree or graduate qualification provided that the LSA recommendation demonstrates that the requirements for earning the subsequent degrees were not substantially the same as those that were required for the first LSA." In 2013, the NMCD changed its rule to prohibit additional LSAs for additional degrees of the same level. Defendant began his term of incarceration in 2017, thus the 2013 rule applies. As relevant to this case, the rule revised on August 14, 2013 provides: "[a]n inmate may be awarded only one (1) [LSA] for receiving an [a]ssociate's degree. Subsequent [a]ssociate['s] degrees are not eligible for an LSA." CD-082801(B)(3)(h) (2013).

**C.    Defendant Had a Liberty Interest in Eligibility for an LSA Because He Earned a Second Associate's Degree**

{18}    In *Houidobre* we interpreted the EMDA to provide a liberty interest in *eligibility* for an LSA when an inmate completes the statutory prerequisites for an

11

LSA award. *See* 2025-NMSC-007, ¶ 13 ("[T]he EMDA establishes a mandatory right to eligibility when a prisoner successfully completes a program. However, . . . the LSA provision only entitles [a p]risoner to further consideration for an award under the terms of the EMDA."). In *Houidobre*, the prisoner completed two separate addictions programs for which he sought two separate LSAs under Section 33-2-34(D)(1) (2015), but the NMCD determined—without providing the prisoner with notice and an opportunity to respond—that the two programs were actually one and the same. *Id.* ¶¶ 3-4. Under the relevant NMCD rule providing that "'an inmate is eligible for only one (1) [LSA] per program,'" the NMCD found that the prisoner was ineligible to receive a second LSA for what it considered to be a repeat of the same program. *Id.* ¶ 3 (citation omitted).

{19}     We held that "[o]nce the NMCD approves a prisoner for a program and the prisoner subsequently completes the program, the statute creates a liberty interest in the prisoner's *eligibility* for the LSA." *Id.* ¶ 25 (emphasis added). However, even after that liberty interest is created, prison officials have discretion to deny an LSA in accordance with statute and rule: "If prison officials do not deem the prisoner ineligible under one of the statutory disqualifications or a promulgated rule consistent with NMCD authority, then the prison officials' review of the application is limited to the overall quality of the prisoner's participation." *Id.*

{**20**}    As applied to this case, we have no difficulty concluding that the EMDA creates a liberty interest in eligibility for an LSA when a prisoner achieves the educational degrees specified in Section 33-2-34(D)(2)-(5) (2015). *Houidobre* forecloses the State's argument that Defendant had *no* liberty interest in eligibility for an LSA for his second associate's degree. Instead, *Houidobre* instructs that when Defendant earned his second associate's degree, he had a liberty interest in eligibility for an LSA under Section 33-2-34(D)(3) (2015), which provides that "[a] prisoner . . . is eligible for [LSAs] . . . for earning an associate's degree" in the amount of "four months."

{**21**}    However, a liberty interest in eligibility for the second LSA does not mean that the defendant was ultimately *entitled* to the LSA. *See Houidobre*, 2025-NMSC-007, ¶ 18 (holding that "eligibility is not entitlement" (text only) (citation omitted)). The Legislature delegated authority to the NMCD to promulgate rules implementing the EMDA in Section 33-2-34(H) (2015), and the NMCD denied Defendant's LSA pursuant to its own rule, CD-082801(B)(3)(h) (2013). Therefore, unlike in *Houidobre*, the question here is not whether Defendant received adequate process when his LSA was denied. *See* 2025-NMSC-007, ¶ 25 (recognizing that the NMCD has discretion to deny an LSA pursuant to "a promulgated rule consistent with NMCD authority"); *id.* ¶ 29 (noting that "there was no rule or policy announcement

13

that RDAP and TC could not both count toward separate awards" and "NMCD's argument might be persuasive if its policies contained such a rule"). Rather, in this case, the crux of the issue is whether the prison rule was reasonably related to the legitimate penological interests of the EMDA, or whether, under *Turner*, the rule was arbitrary and irrational and therefore constitutionally deficient.

**D.      The NMCD's Rule of Denying an LSA to Inmates Who Earn More Than One Associate's Degree Is Rationally Related to a Legitimate Penological Interest**

{22}      The district court concluded that the NMCD rule was "arbitrary and capricious" because it was not rationally related to the rehabilitative goals of the EMDA. The district court found that those goals were, as it variously described, "to encourage cooperation by inmates with the penal institution," "to prepare an inmate to re[e]nter his community with the tools necessary to become a productive citizen . . . by having the skills to be able to support himself," and "encouraging inmate cooperation and good behavior." In striking down the rule, the district court relied on *Turner*, 482 U.S. at 89-90, for the proposition that a rule "cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the [rule] arbitrary or irrational." Likewise, Defendant argued before the district court—and continues to argue on appeal—that *Turner* is the governing standard that requires this Court to strike down NMCD's rule.

{23} We pause to address the question of whether to adopt *Turner* as the governing standard for assessing the validity of a prison rule in New Mexico, as was the working understanding of the parties and the district court. This is an issue of first impression because, while we have applied *Turner*, we have not yet formally adopted it as the standard involving challenges to NMCD rules. *See Cordova*, 2004-NMSC-026, ¶¶ 12, 15-16. We now hold that *Turner* is the governing standard. As *Turner* explains, and our case law reflects, prisoners' appeals of the administrative decisions of prison officials implicate specific considerations not arising in other kinds of administrative appeals. *See Turner*, 482 U.S. at 95 (explaining many of prisoners' rights are "subject to substantial restrictions as a result of incarceration"); *Cordova*, 2004-NMSC-026, ¶¶ 11-28 (applying United States Supreme Court precedent construing prisoners' constitutional claims within the constraints imposed by incarceration). While "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *Turner*, 482 U.S. at 84, such protections are subject to restriction and limitation to ensure internal order and security in penal institutions. *See also Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979) (quoting prior authority for the proposition that "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system'" (citation omitted)). We

conclude that the standard adopted in *Turner*, which is tailored to the specific considerations arising in prison settings, is suitably deferential to prison authorities, while ensuring meaningful judicial review of prisoners' constitutional claims.

{24}    In *Turner*, the United States Supreme Court established a form of rational basis review for the validity of prison rules. The *Turner* Court stated that in assessing the reasonableness of a prison rule the district court should consider four factors. 482 U.S. at 89-91. First, the district court must consider whether there is "a valid, rational connection between the prison [rule] and the legitimate governmental interest put forward to justify it." *See Turner*, 482 U.S. at 89 (internal quotation marks and citation omitted). Second, the district court considers "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third "is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* The final factor considers whether there are other "ready alternatives" to the challenged rule. *Id.*

{25}    We have previously applied *Turner*'s rational basis review to the question of whether a prison transfer was made with a retaliatory motive in *Cordova*, and we concluded that the district court had appropriately determined that the transfer "was reasonably related to legitimate penological interests." 2004-NMSC-026, ¶¶ 12, 15-

16

16. In *Cordova*, we did not conduct any further inquiry into the remaining three *Turner* factors to reach our conclusion. *Id.*

{26} In this case, as in *Cordova*, we conclude that the first *Turner* factor sufficiently resolves our inquiry. Further, we conclude that the remaining factors set forth in *Turner* are not applicable to this case because the NMCD rule at issue here does not restrict constitutionally protected activity but rather sets forth eligibility criteria for an additional benefit to which a prisoner is not normally entitled. *See Houidobre*, 2025-NMSC-007, ¶ 13 (noting "[t]here is no language compelling an award upon the completion of an approved program. The NMCD retains its statutorily defined scope of review post-eligibility"). We consider only the first *Turner* factor: namely, whether there is "a valid, rational connection between the prison [rule] and the legitimate governmental interest put forward to justify it." 482 U.S. at 89 (internal quotation marks and citation omitted). As a corollary, we recognize that a rule "cannot be sustained where the logical connection between the [rule] and the asserted goal is so remote as to render the [rule] arbitrary or irrational." *Id.* at 89-90.

{27} Under that standard, we reverse the district court's determination that the rule is constitutionally deficient. We begin by noting that the EMDA advances the penological interest of "motivating individuals to shorten their time spent in prison while becoming more productive members of our society." *Tafoya*, 2010-NMSC-

17

019, ¶ 19. We readily conclude that inmate rehabilitation is a legitimate and neutral penological interest. *See State v. Aqui*, 1986-NMSC-048, ¶ 18, 104 N.M. 345, 721 P.2d 771, *holding limited by Brooks v. Shanks*, 1994-NMSC-113, 118 N.M. 716, 885 P.2d 637 (stating that the rule of awarding good time credit serves the legitimate purpose of rehabilitating inmates). Instead, the crux of the dispute is whether NMCD's proffered penological interest is rationally connected to the rule at issue. *Turner*, 482 U.S. at 89.

{28}     The State contends the rule is rationally related to the EMDA's penological purpose because it promotes higher levels of education for prisoners, and people who have higher educational attainment also have better employment opportunities. The State's rationale is not unreasonable. NMCD's rule has the effect of encouraging inmates to attain higher educational levels to improve future employment opportunities. Indeed, the record shows that Defendant is working towards earning a bachelor's degree, an achievement that would make him eligible for an additional LSA of five months under the EMDA and NMCD rule. Section 33-2-34(D)(4) (2015); CD-082801(B)(3)(c) (2013). In the absence of the NMCD rule, inmates might be disincentivized from taking the comparatively longer time needed to graduate with a bachelor's degree rather than undertaking multiple associate's degrees. Indeed, those interested only in shortening their sentences, rather than

18

enhancing their skills or education, would pursue just such a strategy. The dissent's interpretation ignores this reality. *Dissent*, ¶ 33. Thus, the rule encouraging prisoners to attain higher levels of education is rationally related to the rehabilitative goals of the EMDA because it assists prisoners in preparing to successfully reenter the community. *See generally Benavidez v. Sierra Blanca Motors*, 1996-NMSC-045, ¶ 19, 122 N.M. 209, 922 P.2d 1205 (observing that prison education and employment programs "provide[] an avenue for the [s]tate to foster the rehabilitative aspect of incarceration by allowing eligible inmates the opportunity to prepare themselves to become productive members of society upon their release from confinement"). To the extent the dissent argues "the State has failed to sufficiently demonstrate a valid, rational connection of the challenged NMCD [rule] to the EMDA," we disagree. *Dissent*, ¶ 34.

{29}    As the United States Supreme Court has observed, "the first question to be answered is not whose plan is best, but in what branch of the Government is lodged the authority to initially devise the plan." *Bell*, 441 U.S. at 562. The Legislature has assigned rule-making authority under the EMDA to NMCD. The EMDA advances a legitimate and neutral penological interest, and the State has identified a rational basis for restricting the number of associate's degrees for which an LSA may be awarded in service of that interest. It is this standard, and not another, by which we

19

measure the NMCD rule. *Turner*, 482 U.S. at 89-90 (holding that a prison rule is valid unless "the logical connection between the rule and the asserted goal is so remote as to render the [rule] arbitrary or irrational").

## III.   CONCLUSION

{30}   We hold the NMCD denied Defendant his LSA pursuant to a prison rule bearing a rational relationship to the legitimate penological interest of inmate rehabilitation. Therefore, we reverse the district court.

{31}   **IT IS SO ORDERED.**

_____

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

_____

**DAVID K. THOMSON, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**JULIE J. VARGAS, Justice**

**C. SHANNON BACON, Justice, dissenting**

**Bacon, Justice (dissenting).**

{32}    I agree with the majority's conclusion that the Legislature is the proper entity "to initially devise the plan"—the Earned Meritorious Deduction Act (EMDA), NMSA 1978, § 33-2-34 (2015, amended 2025)—for granting good time credits and that the Legislature "assigned rule-making authority under the EMDA to [New Mexico Corrections Department (NMCD)]" to effectuate the statute's "legitimate and neutral penological interest." *Maj. op.* ¶ 29. It does not follow, however, that the NMCD rule in question properly abides with those legitimate legislative interests. In our adoption of the standard in *Turner v. Safely*, 482 U.S. 78, 78 (1987), *superseded by statute on other grounds as stated in Butler v. Porter*, 999 F.3d 287, 295 (5th Cir. 2021), I would hold that, upon a prima facie challenge to a regulation purportedly effectuating a particular statute, the State must show a "valid, rational connection" between the regulation and a legitimate governmental interest *of that statute*, as evident in the statute's plain language or underlying intent. *See Valid*, *Black's Law Dictionary* (12th ed. 2024) (defining "valid" as "meritorious"). While still a rational basis review, this standard would properly preclude an agency from offering a generic or pretextual defense of a regulation that deviates from the legislative intent underlying a governing statute.

{33} Under this application of the *Turner* standard, I would concur with the district court that the EMDA presents only two limitations on lump sum awards (LSA), *see* Section 33-2-34(G) (2015), neither of which are relevant here, leading to the conclusion that the LSA limitations in the challenged NMCD rule are contrary to the statute's plain language and intent. *See State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("[T]he Legislature knows how to include language in a statute if it so desires." (alteration in original) (internal quotation marks and citation omitted)). In actuality, the State's claim otherwise is undercut by the facts of this case: regardless of the benefits of an advanced degree, Defendant's employment opportunities were surely improved by adding the skills and credentials of his associate's degree in business administration to his previously held associate's degree in a distinct field. As I read the EMDA, the Legislature intended to create opportunities for educational achievement and motivation of good conduct, limited only by the two restrictions in Section 33-2-34(G) (2015). Significantly, the State's rationale for the challenged NMCD rule is a policy decision by the *agency*, rather than by the Legislature.

{34} As the majority quotes *State v. Houidobre*, 2025-NMSC-007, ¶ 28, 563 P.3d 890, this Court is "'not [a] wallflower[] or [a] potted plant[].'" *Maj. op.* ¶ 10. Under the foregoing concerns, I conclude that reversal in this case comes dangerously close to providing the State with an improper rubber stamp. Because the State has failed

to sufficiently demonstrate a valid, rational connection of the challenged NMCD rule to the EMDA—instead offering cursory and untethered references to "incentiviz[ing] completion of higher degrees" toward "the inmate's future employability"—I respectfully dissent.

_____

**C. SHANNON BACON, Justice**
