2003-NMSC-025

76 P.3d 1092

**Andrew MILLER, Petitioner,**

v.

**Lawrence TAFOYA, Warden, Respondent.**

**No. 27,614.**

Supreme Court of New Mexico.

Aug. 28, 2003.

John B. Bigelow, Chief Public Defender, Sophie Cooper, Assistant Public Defender, Albuquerque, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Ralph Trujillo, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

MAES, Chief Justice.

{1} Petitioner appeals the district court's dismissal of his habeas corpus petition. Petitioner filed the petition after prison officials elevated the punishment of his conviction for a minor level offense to major level status. Because of the elevation, 90 days of Petitioner's good-time credits were forfeited and he was sentenced to disciplinary segregation for 25 days. Petitioner would have been ineligible for good-time credits while in disciplinary segregation. The district court denied the petition, concluding that disciplinary procedures were complied with and that judicial review was not available unless prison officials clearly abused their discretion or acted capriciously, which the district court judge did not find. Petitioner petitioned this Court for a writ of certiorari, which we granted. See NMSA 1978, § 34–5–14 (1972); Rule 12–501 NMRA 2003 (allowing for appeal to this Court following the denial of a habeas corpus petition in district court).

{2} Petitioner asserts on appeal that: (1) the district court's dismissal of his petition without a hearing was erroneous because it did not apply the right standard of review and there was no evidence supporting its conclusion that disciplinary procedures were complied with; (2) he was wrongfully deprived of good-time credits because he was not notified prior to the disciplinary hearing of the possible elevation of the minor level offense to a major level offense; and (3) he was wrongfully deprived of good-time credits because an improper basis was used to elevate the minor level offense to major level status.

{3} Since the petition alleged that Petitioner was wrongfully deprived of good-time credits, the district court was required to review the petition to determine if those good-time credits were divested in accordance with statutory and administrative procedures. We also conclude that the district court should have held an evidentiary hearing on the actual notice issue because Petitioner raised sufficient factual allegations in his petition that required the district court to determine if his claim was valid. We therefore reverse and remand this case to the district court with instructions to review the petition to determine if Petitioner was wrongfully deprived of good-time credits as the result of an improper basis being used to elevate the sentence, and to hold an evidentiary hearing on the actual notice claim to determine if he was wrongfully deprived without sufficient notice of the possible elevation. Since we are remanding this case to the district court for review of the petition, we do not address Petitioner's claim that no evidence supported the district court's conclusion that disciplinary procedures were complied with or that an improper basis was used to enhance Petitioner's sentence.

## FACTS

{4} In July 2000, Officer Valles, a telephone monitor at the Southern New Mexico Correctional Facility, investigated an illicit telephone call that was made from a prisoner to an outside business. The caller had used an inmate's personal identification number (PIN) to make a three-way call to the business. The caller opened an account with the business in the name of "Walnut Corporation." The caller gave the sales representative a telephone number and a Tularosa, New Mexico, address. The caller then ordered $95.17 worth of office supplies, which he had shipped to an address in Brownfield, Texas. The caller told the sales representative that his name was "John Russell." Officer Valles recognized the caller's voice as the Petitioner's.

{5} Prison officials filed a misconduct report against Petitioner. He was charged with three prison violations: (1) a Category A offense, fraud; (2) a Category B offense, willfully refusing to obey a lawful order of any staff member; and (3) a Category C offense, improper or unauthorized use of equipment. A disciplinary officer investigated the report and recommended that the Category A offense be reviewed at a major level hearing, that the Category B offense be reviewed at a minor level hearing, and that

the Category C offense be dismissed. The warden approved the disciplinary officer's recommendations. Afterwards, prison officials notified Petitioner that the Category A offense would be reviewed at a major level hearing and that the Category B offense would be reviewed at a minor level hearing.

{6} Since the Category B offense was being reviewed as a minor level offense, Petitioner did not fully challenge this charge because the worst punishment that a prisoner could receive for a minor level offense is the loss of privileges. However, because the punishment for the Category A offense was major level, Petitioner devoted much of his defense to this charge. According to Petitioner in his petition, as soon as he walked into the hearing the hearing officer told him that he was dismissing the Category A offense and that he was only going to review the Category B offense. Petitioner, nonetheless, tried to address the Category A offense. After Petitioner was again told the Category A offense was being dismissed, he "let the hearing end." His final statement to the hearing officer on the Category B charge was that he was not "challenging the charge," but was instead challenging the fact that he had been told to stop making those types of telephone calls by a correctional officer different than the one alleged.

{7} The hearing officer issued his decision several days later. The hearing officer recommended the dismissal of the Category A and C offenses for overcharging. The hearing officer, however, found Petitioner guilty of the Category B offense, partly on Petitioner's own testimony. The hearing officer recommended that the Category B offense be elevated to a major level offense because Petitioner had previously engaged in the same type of conduct. Under prison regulations, punishment for a Category B offense may be elevated to major level status when certain factors are meet. One of those factors is if the "specific behavior is repeated or has previously been subject of disciplinary action." The hearing officer noted that Petitioner had previously been convicted of "using the Inmate[s'] telephone system, calling businesses, and ... giving a false name." Based on Petitioner's "past history, of illegally using the Inmate[s] telephone system," the hearing officer recommended that Petitioner

forfeit 90 days of earned good-time credit and be placed in disciplinary segregation for 25 days. The decision was approved by the warden and upheld on appeal to an appeals officer.

{8} Petitioner then filed a habeas corpus petition in state district court. The district court appointed the public defender department to represent Petitioner and ordered the State to respond to the petition. Petitioner filed an amended petition in which he challenged the forfeiture of his good-time credits and placement in disciplinary segregation on the grounds that an improper basis was used to elevate his punishment and that he was not notified that he was facing major level punishment for his minor level offense. The State argued in its response that a proper basis was used to elevate Petitioner's punishment and that Petitioner had sufficient notice that he was facing major level punishment. Petitioner moved for oral argument on the pleadings. When no hearing was scheduled, Petitioner requested a hearing. A few days later, the district court denied Petitioner's habeas petition without a hearing and issued a decision. In its written decision, the district court stated that an evidentiary hearing was not necessary because there was no factual dispute between the parties. The district court determined that there was no basis for relief based on its conclusion that disciplinary procedures were followed. In addition, citing *Apodaca v. Rodriguez,* 84 N.M. 338, 503 P.2d 318 (1972), the district court stated that the actions of prison officials in managing penal institutions are not subject to judicial review unless they are exercised "in such a manner as to constitute clear abuse or caprice upon the part of the prison official." Petitioner then appealed to this Court.

## DISCUSSION

{9} In appeals pertaining to habeas corpus proceedings, we defer to the district court's findings of fact if supported by substantial evidence. *Lytle v. Jordan,* 2001–NMSC–016, ¶ 28, 130 N.M. 198, 22 P.3d 666; *Duncan v. Kerby,* 115 N.M. 344, 348 n. 2, 851 P.2d 466, 470 n. 2 (1993) ("[A]lthough we review the habeas trial court's findings of fact with deference similar to the federal

model, our degree of deference is more accurately termed a review for support by substantial evidence as that standard is applied in New Mexico."). As such, we view the facts in the light most favorable to the prevailing party and indulge all inferences arising from the district court's factual findings. *Aken v. Plains Elec. Generation & Transmission Coop., Inc.,* 2002–NMSC–021, ¶ 19, 132 N.M. 401, 49 P.3d 662. However, we review questions of law or mixed fact and law de novo. *Lytle,* 2001–NMSC–016, ¶ 28, 130 N.M. 198, 22 P.3d 666. Claims involving the denial of procedural due process are legal questions that we review de novo. *State ex rel. Children, Youth & Families Dep't v. Ruth Anne E.,* 1999–NMCA–035, ¶ 22, 126 N.M. 670, 974 P.2d 164.

**{10}** Petitioner contends that the district court's dismissal of his habeas petition without a hearing was erroneous because there was no evidence supporting the district court's determination that disciplinary procedures were complied with. First, there was "no evidence supporting the Department's determination that Petitioner committed the specific behavior which had previously been the subject of disciplinary action," and second, the "Department failed to comply with the dictates of due process as set out in *Brooks v. Shanks.*" Petitioner argues that since this case involved the divestiture of good-time credits, the district court was required to hold an evidentiary hearing, "or if the parties agree on the evidence, to determine not only whether the statutory and administrative procedures have been met[,] but also whether the dictates of due process have been satisfied." The State, on the other hand, asserts that the dismissal was proper because the facts show that Petitioner was not entitled to relief as a matter of law.

**{11}** In its order, the district court stated that no evidentiary hearing was necessary because there was no factual dispute between the parties. The district court concluded that based upon its review of the amended petition and the response, "disciplinary procedures were complied with and there [was] no basis for relief." Thus, the district court decided that there was no judicial review of the petition absent clear abuse or capricious action on the part of prison officials. Petitioner argues that this decision was erroneous because this case involved the divestiture of good-time credits. We agree.

**{12}** We recently held that prison disciplinary procedures are subject to judicial review when the case involves the deprivation of good-time credits. *Lopez v. LeMaster,* 2003–NMSC–003, ¶ 23, 133 N.M. 59, 61 P.3d 185 ("The Due Process Clause and our recognition in *Brooks* of a liberty interest in good-time credit allows for judicial oversight of the prison procedures."); *see also Brooks v. Shanks,* 118 N.M. 716, 720, 885 P.2d 637, 641 (1994) (stating that when a habeas corpus petition alleges the wrongful deprivation of good-time credits, courts should determine whether the deprivation satisfied due process requirements). As we stated in *Lopez,* habeas corpus relief extends to prison disciplinary proceedings, and is the proper method of review "when certain constitutional guarantees are denied, overlooked or omitted." 2003–NMSC–003, ¶ 22, 133 N.M. 59, 61 P.3d 185. We also stated, however, that because prison officials should generally be entrusted with prison management and prisoners have limited due process rights, judicial review should be narrow to reflect these principles. *Id.* ¶¶ 21–23. Accordingly, the district court's determination that the petition was not reviewable unless there was evidence that prison officials clearly abused their discretion or acted capriciously was incorrect.

**{13}** In *Brooks,* this Court specified the procedures courts must employ when analyzing "whether a forfeiture or termination of good-time credits has been carried out so as to violate an inmate's right to due process." 118 N.M. at 720, 885 P.2d at 641. When a petition fails to establish a prima facie case for relief or if the undisputed facts shown by either the record or the respondent's response clearly show that the petitioner is not entitled to relief as a matter of law, the district court may dismiss the petition without holding an evidentiary hearing. *Id.; see* Rule 5–802(E)(1) & (3) NMRA 2003. Under this scenario, there is no need for an evidentiary hearing because there is no question that the petitioner is not entitled to relief as a matter of law. However, if the petition establishes a prima facie case which is uncontroverted by the record or the re-

sponse, the district court must hold an evidentiary hearing to determine the validity of the petitioner's allegations. *Brooks,* 118 N.M. at 720, 885 P.2d at 641; *see* Rule 5–802(E)(3) & (4). As discussed below, there were sufficient facts to at least warrant an evidentiary hearing on the actual notice issue. Regarding the sentence enhancement issue, we believe that the district court should review the petition, the record, and the response to determine if an improper basis was indeed used to enhance Petitioner's sentence. The district court may then hold an evidentiary hearing on that issue if the facts warrant it.

{14} The statutorily created right to good-time credit is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Brooks,* 118 N.M. at 717, 885 P.2d at 638 (holding that the good-time credits statutes "confer an entitlement to good-time credits and that this entitlement may be divested only when the statutory and administrative procedures relating to those credits have been followed"); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within the Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to ensure that the state-created right is not arbitrarily abrogated."). Therefore, before a prisoner may be deprived of good-time credits, he or she must be afforded due process.

{15} In *Wolff,* the United States Supreme Court established the perimeters of due process in prison disciplinary proceedings. Under *Wolff,* minimum principles of due process require that prisoners: (1) receive advance written notice of the charges no less than 24 hours before the hearing; (2) have an opportunity to present documentary evidence and call witnesses when it can safely be done; (3) receive a written statement of the evidence relied upon and reasons for the disciplinary action; (4) receive assistance from a fellow prisoner or a prison employee when the prisoner is illiterate or the case is complex; and

(5) receive an impartial hearing. 418 U.S. at 563–72, 94 S.Ct. 2963. The threshold issue in this appeal is whether Petitioner received notification of the possible elevation of the Category B offense to major level status and the resultant loss of good-time credits before the disciplinary hearing.

{16} The essence of due process is the right to notice and an opportunity to prepare and defend against the allegations. *Mills v. N.M. State Bd. of Psychologist Exam'rs,* 1997–NMSC–028, ¶ 14, 123 N.M. 421, 941 P.2d 502 ("[D]ue process requires notice and an opportunity to be heard prior to a deprivation of a protected liberty or property interest."). "Part of the function of notice is to give the charged party a chance to marshal the facts in his [or her] defense and to clarify what the charges are, in fact." *Wolff,* 418 U.S. at 564, 94 S.Ct. 2963. Under due process principles, Petitioner was entitled to advance notice of the possible elevation of the Category B offense and the basis for the elevation so that he could prepare a defense and adequately respond to the allegations.

{17} Petitioner was also entitled to advance notice of the charges under prison regulations. In minor level cases, prison officials must notify the prisoner "of the minor level hearing no less than 24 hours prior to the hearing." CD–090301 (E)(4). In major level cases, prison officials must give the prisoner "advance written notice of the charge(s) . . . not less than 72 hours before the appearance before the Hearing Officer." CD–090301 (G)(3). Prison officials must also give the prisoner "a copy of the report and the action, and the grounds for finding the report to be a major report." CD–090301 (E)(3). Under prison regulations, a Category B offense may be elevated to major level status if one of the following factors is found:

(A) A life-threatening incident is involved;

(B) A threat to the security of the institution;

(C) The specific behavior is repeated or has previously been the subject of disciplinary action;

(D) Substantial property damage or loss has occurred;

(E) Any injury received was not of a minor nature and required medical attention;
(F) The offense was committed by more than one person, excluding offenses in which more than one person is required to commit the offense.

CD–090301.1c.

{18} Neither party in this case disputes that Petitioner was entitled to advance notice of the charges before the disciplinary hearing. What the parties do dispute is whether notice was given. Petitioner contends that he was not notified before the disciplinary hearing that a conviction of the Category B offense would possibly result in major level punishment. The State does not dispute Petitioner's contention, but instead makes a roundabout argument as to why notice was sufficient. Specifically, the State argues that Petitioner knew or should have known that he was facing major level punishment for the Category B offense because: (1) the prison manual states that repeat behavior is subject to major level punishment and Petitioner knew that he had previously engaged in the same type of conduct; and (2) Petitioner should have treated the whole report as a major level offense since the Category A offense was being reviewed as a major level offense.

{19} We do not believe that the State's argument on appeal regarding notice comports with prison regulations or due process principles. Since prison officials were seeking major level punishment for the Category B offense, they were required to give Petitioner "advance written notice of the charge(s) . . . not less than 72 hours before the appearance before the Hearing Officer." They were also required to give Petitioner "a copy of the report and the action, and the grounds for finding the report to be a major report." This was not done in this case. In addition, since Petitioner was also facing the possible deprivation of good-time credits as a result of the elevation of the Category B offense, he was entitled to advance notice of the charges as a matter of due process. *See Brooks*, 118 N.M. at 721, 885 P.2d at 642 (holding that prison officials must notify prisoners of the potential deprivation of good-time credits before the prison disciplinary hearing).

{20} As Petitioner's factual allegations demonstrate, prison officials never notified him before the disciplinary hearing that they were considering elevating the Category B offense to major level status, which would have resulted in the loss of good-time credits. Instead, prison officials expressly informed him that the Category B offense was only going to be "reviewed at a [m]inor level hearing." Petitioner apparently relied upon this explicit notice in preparing his defense. As Petitioner states, this is why he did not fully challenge the Category B offense. Moreover, as the facts indicate, it was only after the hearing that the hearing officer decided to elevate the offense based upon his finding under Factor C that "[t]he specific behavior is repeated or has previously been the subject of disciplinary action." Thus, we reject the State's argument that Petitioner should have treated and defended against the Category B offense as if it were a major level offense, when he was expressly told by prison officials that the offense was only going to be reviewed at a minor level hearing.

{21} Since the petition alleged that Petitioner had been wrongfully deprived of good-time credits because an improper basis was used to enhance his sentence and he was not given adequate notice of the possible enhancement before the disciplinary hearing, the district court was required to review the petition to determine if "the statutory and administrative procedures relating to those credits ha[d] been followed." *Id.* at 720, 885 P.2d at 641; NMSA 1978, § 33–2–11(B) (1990) (providing for de novo review at the district court level following the exhaustion of administrative procedures "unless otherwise provided by law"). When the factual allegations in a petition demonstrate that petitioner's good-time credits may have been wrongfully deprived, the district court must hold an evidentiary hearing to verify or discredit the petitioner's factual allegations unless it clearly appears from the facts in the petition, or the uncontroverted facts in the record or response, that the petitioner is not entitled to relief as a matter of law. *Brooks*, 118 N.M. at 720, 885 P.2d at 641; *see* Rule 5–802(E).

{22} We believe that the petition did not warrant dismissal as a matter of law. The allegations in the petition sufficiently showed that the divestiture of good-time credits was not done in accordance with prison procedures or due process. Neither the State's response nor any other documentary evidence conclusively showed that Petitioner was not entitled to relief as a matter of law. As a result, the district court was required to "hold an evidentiary hearing to verify or discredit the petitioner's factual allegations," *id.* at 720, 885 P.2d at 641, and thus, determine if Petitioner's good-time credits were divested in accordance with regulatory procedures and due process requirements, *id.* at 717, 720–721, 885 P.2d at 639, 641–642. Instead, the district court decided not to review the petition after determining that it was not reviewable because the actions of prison officials did not rise to the level of abuse warranting such review. The district court's determination that the petition was not subject to review was incorrect. Therefore, we conclude that the trial court erred when it dismissed Petitioner's petition without reviewing the petition, and that the allegations in the petition regarding the actual notice issue were sufficient to warrant an evidentiary hearing on that matter in light of the record and the State's response. Whether an evidentiary hearing is warranted on the improper basis issue is a determination that the district court needs to ascertain in its review of the petition.

## CONCLUSION

{23} We hold that the district court was required to review the petition to determine if Petitioner was wrongfully deprived of good-time credits by prison officials, and thus its dismissal without review was erroneous. We also conclude that because Petitioner established a prima facie case on the issue of actual notice, the district court should have held an evidentiary hearing to determine if those factual allegations were true. Therefore, we remand this case to the district court to review the claims presented in the petition and to conduct an evidentiary hearing on the actual notice claim.

{24} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, and PATRICIO M. SERNA, Justices.

RICHARD C. BOSSON, and EDWARD L. CHÁVEZ, Justices (not participating).