The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: November 18, 2024

**NO. S-1-SC-39473**

**STATE OF NEW MEXICO and
DWAYNE SANTISTEVAN, Warden,**

     Plaintiffs-Appellants,

v.

**DONOVAN HOUIDOBRE,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
Michael H. Stone, District Judge**

Raúl Torrez, Attorney General
Erica Schiff, Assistant Attorney General
Santa Fe, NM

for Appellants

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellee

**OPINION**

**THOMSON, Chief Justice.**

{1}    We are asked once again to examine the extent to which the Earned Meritorious Deductions Act (EMDA) creates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. NMSA 1978, § 33-2-34 (2015); *see Miller v. Tafoya*, 2003-NMSC-025, ¶¶ 12, 23, 134 N.M. 335, 76 P.3d 1092. In this case, we discuss the difference between being *eligible* for a program and *entitled* to its benefits, and a prison's obligation to allow a prisoner the opportunity for review. Specifically, we must determine whether the due process right of Donovan Houidobre (Prisoner) was violated when the New Mexico Corrections Department (NMCD) deemed him ineligible for a thirty-day lump-sum meritorious deduction (LSA) and then denied him an opportunity to appeal. The district court found in favor of Prisoner, issuing the Writ of Habeas Corpus, which ordered the award of a thirty-day credit without further administrative review. We affirm the district court's award of the LSA, but take the opportunity to clarify the liberty interest created by the EMDA and the grounds for issuing the writ. We also advise the NMCD to promulgate procedural rules in accordance with this opinion's holding in order to comply with due process.

## I.    BACKGROUND

{2}    The EMDA is a legislative "tool for managing prisons and jails and to encourage inmate cooperation, good behavior, and rehabilitation." *State v. Tafoya*, 2010-NMSC-019, ¶ 19, 148 N.M. 391, 237 P.3d 693. The EMDA incentivizes participation by awarding deductions from a prisoner's term of confinement upon the prisoner's fulfillment of certain criteria. The Legislature established two deduction regimes, meritorious deductions and LSAs, the subset of meritorious deductions at issue in this appeal. Sections 33-2-34(A)-(B), (D)-(E). The EMDA provides for a thirty-day LSA once two criteria are met. First, a prisoner must satisfy LSA eligibility requirements by successfully completing an approved program. Section 33-2-34(D)(1) (stating in relevant part that "[a] prisoner . . . is *eligible* for [LSA]s . . . for successfully *completing* an approved . . . substance abuse . . . program" (emphasis added)); Section 33-2-34(D)(2)-(5) (listing other acceptable programs). Second, once eligible, the final award is subject to a recommendation by the Classification Supervisor based on the prisoner's level of participation in the program and a subsequent approval of the Classification Supervisor's recommendation by the Warden. Section 33-2-34(B) ("A prisoner may not earn meritorious deductions unless the recommendation of the classification supervisor is approved by the warden or the warden's designee."). If the prisoner is housed in

2

a private prison, the application for an LSA is subject to final approval by the NMCD's Director of the Adult Institutions. Section 33-2-34(K) ("All decisions regarding the award or forfeiture of meritorious deductions at such facilities are subject to final approval by the director of the adult institutions division of the [NMCD] or the director's designee."). If both criteria are satisfied, the lump-sum deduction will reduce the time "an inmate must serve before becoming eligible for parole or release." *State v. Montano*, 2024-NMSC-019, ¶ 25, 557 P.3d. 86.

{3}     While incarcerated at Lea County Correctional Facility, a privately owned prison, Prisoner enrolled in and completed an addictions program called Therapeutic Communities (TC), after which he was approved for a 120-day deduction. **[**He subsequently applied and was approved for enrollment in the Residential Drug Abuse Program (RDAP), another addictions program that the NMCD instituted and approved for LSA consideration. Despite completing the program, the NMCD deemed Prisoner ineligible to receive an LSA because he was previously awarded credit for TC. Multiple prison officials rejected Prisoner's application on the grounds that RDAP is identical to, and supplants, the TC program. Because NMCD rules state that "an inmate is eligible for only one (1) Lump Sum Award per program," the prison officials found Prisoner ineligible for the additional LSA. CD-082801, § B.2.d (Aug. 14, 2013).

{4}     Prisoner did not immediately appeal the NMCD's decision as NMCD policy expressly precludes any review. NMCD CD-082801, § G (2013) ("Decisions on LSA awards except on cases described above may not be appealed.").[1] Six years later, Prisoner filed a Petition for Writ of Habeas Corpus alleging that the denial of his LSA violated his right to procedural due process. The district court granted the petition and ordered the award of a thirty-day LSA, finding that Prisoner had "a liberty interest in the [LSA] previously recommended and rejected for the completion of [the RDAP]." The district court supported its conclusion by noting that it "cannot make a finding that there is a specific policy indicating RDAP cannot be utilized for an LSA if the individual already received an LSA based on completion of TC." The district court did not address the two reasons why the denial might violate due process: (1) Prisoner was entitled to an award, so any deprivation violated his due process rights, or (2) the NMCD's reasoning was arbitrary because there was no specific policy precluding deductions for both programs. *See Miller*, 2003-NMSC-025, ¶ 13. The State appealed, arguing that the EMDA does not create a liberty interest in LSAs because the awards are discretionary.

---

[1]We do not find any "cases described above" in the NMCD policy, and so it appears that any decision regarding the award of an LSA is barred from further review. NMCD CD-082801, § G (2013).

4

## II. DISCUSSION

{5}     The parties' positions are diametrically opposed. The State contends that the successful completion of an approved program does not create a liberty interest. According to the State, the Legislature's use of "may" and the permissive nature of the EMDA affords the NMCD unfettered discretion such that a state-created liberty interest cannot arise from its terms. Section 33-2-34(B) ("A prisoner may earn meritorious deductions . . . ."). In response, Prisoner advances a sweeping liberty interest, suggesting that once the conditions for *eligibility* are satisfied, a prisoner is *entitled* to the award. Both parties overstate their position.

{6}     We hold that the Legislature created a liberty interest in LSA *eligibility* upon the successful completion of an approved program. *See* § 33-2-34(D)(1) ("A prisoner . . . is *eligible* for [LSA]s . . . for successfully completing an approved . . . program." (emphasis added)). Before depriving Prisoner of his right to consideration of an LSA, the Due Process Clause of the Fourteenth Amendment "requires the government to give notice and opportunity to be heard." *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 26, 122 N.M. 524, 928 P.2d 250. Here, Prisoner was deprived of his eligibility, and NMCD rules expressly prohibit appeal, precluding any opportunity to be heard. NMCD CD-082801, § G (2013) ("Decisions on LSA awards except on cases described above may not be appealed."). Because the NMCD's

regulations violated Prisoner's right to adequate process, restoring Prisoner's thirty-day LSA was an appropriate equitable remedy "tailored to the harm caused by the [NMCD]." *Lopez v. LeMaster*, 2003-NMSC-003, ¶ 25, 133 N.M. 59, 61 P.3d 185.

**A.      Procedural Due Process**

{7}      Under our Rules of Criminal Procedure, Prisoner's Petition for Writ of Habeas Corpus should be granted only if the "custody or restraint is, or will be, in violation of the constitution or laws of the State of New Mexico or of the United States."[2] Rule 5-802(A) NMRA. Prisoner advances a procedural due process argument that his completion of RDAP created a liberty interest in the LSA and that the subsequent "process used to deprive [him] of the lump-sum award was procedurally deficient."[3]

---

[2]Prisoner is not alleging that the sentence was illegal nor that the district court was without jurisdiction. *See* Rule 5-802 NMRA.

[3]Historically, prisoners used the writ of habeas corpus to secure an immediate release from unlawful imprisonment when the judgment against the prisoner was void because the issuing court lacked jurisdiction. *Smith v. Abram*, 1954-NMSC-061, ¶ 5, 58 N.M. 404, 271 P.2d 1010; *Johnson v. Cox*, 1963-NMSC-058, ¶ 2, 72 N.M. 55, 380 P.2d 199; NMSA 1978, § 44-1-1 (1884) (limiting writs of habeas corpus to those grounds where a defendant may "obtain relief from such imprisonment or restraint, if it proves to be unlawful"). The scope of the writ was expanded relying on a legal fiction, where "constitutional violations in a criminal case deprive the trial court of jurisdiction," and immediate release was no longer required. *Lopez*, 2003-NMSC-003, ¶¶ 12, 14, 15 (internal quotation marks and citation omitted). This change is reflected in our Rules of Criminal Procedure, making habeas "the proper avenue to challenge the *unconstitutional* deprivation of good-time credits, even if it would not result in an immediate release." *Perry v.*

6

"Claims involving the denial of procedural due process are legal questions that we review de novo." *Miller*, 2003-NMSC-025, ¶ 9 (citation omitted). Where a due process analysis requires us to determine the nature and scope of a state-created liberty interest through statutory interpretation, our review is similarly without deference to the district court's conclusion. *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61 ("The meaning of language used in a statute is a question of law that we review de novo.").

{8} "Procedural due process requires the government to give notice and an opportunity to be heard before depriving an individual of liberty or property." *Madrid*, 1996-NMSC-064, ¶ 26. A procedural due process inquiry is a two-step analysis. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999); *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). First, we determine whether the individual has been deprived of a constitutionally significant interest. *Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, ¶ 51, 306 P.3d 457 ("We have said numerous times that [t]he threshold question in evaluating a due process challenge is whether there is a deprivation of liberty or property." (alteration in original) (internal quotation marks and citation omitted)); *see Thompson*, 490 U.S. at 460.

*Moya*, 2012-NMSC-040, ¶ 12, 289 P.3d 1247 (emphasis added) (internal quotation marks and citation omitted).

7

Then, if there is a deprivation, we determine whether the NMCD's procedures comport with due process. *See id.*

{9} The crux of this dispute lies in the first step of the procedural due process inquiry, the nature and scope of the liberty interest created by the LSA provision. A liberty interest protected by the Due Process Clause of the Fourteenth Amendment "may arise from two sources—the Due Process Clause itself and the laws of the [s]tate[]." *Cordova v. LeMaster*, 2004-NMSC-026, ¶ 18, 136 N.M. 217, 96 P.3d 778 (internal quotation marks omitted) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). Here, our focus is on the latter and whether the text of the LSA statute creates a constitutionally significant interest. Generally speaking, the "'[s]tate creates a protected liberty interest by placing substantive limitations on official discretion.'" *Brooks v. Shanks*, 1994-NMSC-113, ¶ 10, 118 N.M. 716, 885 P.2d 637 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). Courts have recognized three such substantive limitations.

{10} Our Legislature may create a liberty interest when a statute "establish[es] procedures that control how a deprivation of rights or privileges such as good-time credits may be imposed." *Brooks*, 1994-NMSC-113, ¶ 10; *see also Wolff v. McDonnell*, 418 U.S. 539, 546 (1974). In *Wolff*, the United States Supreme Court held that because Nebraska prisoners "can only lose [awarded] good-time credits if

8

they are guilty of serious misconduct . . . , the minimum requirements of procedural due process appropriate for the circumstances must be observed." *Wolff*, 418 U.S. at 558. Similarly, in *Brooks*, we held that the forfeiture of an awarded good time credit required an evidentiary proceeding to ensure the manner of deprivation accorded with due process. *See Brooks*, 1994-NMSC-113, ¶ 12. We have also acknowledged due process rights to "notice and . . . opportunity to prepare and defend against allegations" that would lead to a forfeiture of already-earned good time credits. *Miller*, 2003-NMSC-025, ¶ 16.

{11} A statute may also require mandatory action that is contingent on discretionary predicates. In *Board of Pardons v. Allen*, 482 U.S. 369 (1987), the United States Supreme Court analyzed a Montana parole statute that mandated parole release if certain criteria were met. The United States Supreme Court held that the statute creates a liberty interest by using "mandatory language ('shall') to 'create a *presumption* that parole release will be granted' when the designated findings are made." *Id.* at 376-78 (emphasis added) (brackets, footnote, and citation omitted) (quoting the Montana statute requiring that "'the board *shall* release on parole . . . any person confined in the Montana state prison or the women's correction center . . . *when* in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community'"

(omissions in original) (second emphasis added)); *see also* NMSA 1978, § 31-21-10(F) (2023) ("*When* a person on parole has performed the obligations of the person's release . . . , the board *shall* make a final order of discharge and issue the person a certificate of discharge." (emphasis added)).

{12}     Perhaps the most obvious substantive limitation on official discretion is where statutes employ "'explicitly mandatory language' . . . [such that if] substantive predicates are present, a particular outcome must follow." *Thompson*, 490 U.S. at 463. For example, New Mexico law providing credit for time served prior to a conviction offers little, if any, room for discretion. *See* NMSA 1978, § 31-20-12 (1977) ("A person held in official confinement on suspicion or charges of the commission of a felony *shall*, *upon conviction* of that or a lesser included offense, *be given credit* . . . ." (emphasis added)).

{13}     Prisoner argues that the LSA statute falls under this last category of protected interests because the Legislature created a "mandatory regime." We agree that the EMDA establishes a mandatory right to eligibility when a prisoner successfully completes a program. However, Prisoner misidentifies the liberty interest, arguing that once the substantive predicate of completing RDAP is present, Prisoner is entitled to the award. Here, Prisoner goes too far with his argument. Absent any statutory disqualifications, the LSA provision only entitles Prisoner to further

10

consideration for an award under the terms of the EMDA. Section 33-2-34(F)(1)-(4) (listing eligibility disqualifications including being in disciplinary segregation and not being an active participant in the program recommended to the prisoner); Sections 33-2-34 (A), (B) (noting review and approval requirements). There is no language compelling an award upon the completion of an approved program. The NMCD retains its statutorily defined scope of review post-eligibility. *See* Sections 33-2-34(B), (K).

**B.     The Nature of the Liberty Interest**

{14}     The LSA provision provides that "[a] prisoner . . . *is eligible* for [LSA]s . . . for successfully *completing* an approved . . . substance abuse . . . program." Section 33-2-34(D)(1) (emphasis added). The Legislature employed mandatory language ("is eligible") such that when "substantive predicates [like the completion of RDAP] are present, a particular outcome must follow." *Thompson*, 490 U.S. at 463. The LSA provision is not couched in permissive statutory language. Consideration by the board is required once a prisoner meets the eligibility criteria. Here, Prisoner completed RDAP—an approved substance abuse program—which created Prisoner's constitutionally significant eligibility interest. Upon completion of the RDAP, the NMCD deemed Prisoner ineligible for reasons not justified by statute or

11

regulation. That decision deprived Prisoner of an interest protected by the Due Process Clause of the Fourteenth Amendment.

{15} Our straightforward analysis is contradicted by the positions taken by both the State and Prisoner, each assuming an extreme stance on the extent of discretion afforded to the NMCD. Prisoner argues that the NMCD has no review authority post-eligibility, while the State interprets the EMDA as conferring the NMCD with unfettered discretion. Neither extreme is supported by the EMDA.

{16} Prisoner suggests that the LSA statute "leaves no authority to the warden or any other corrections official" because, unlike other provisions of the EMDA, such as Section 33-2-34(B), the LSA provision lacks permissive terms like *may*. *See* § 33-2-34(D). In Prisoner's view, the LSA's silence strips the NMCD of any review authority post-eligibility. Thus, the moment of eligibility transforms into a grant of entitlement. There are two crucial defects in Prisoner's reasoning.

{17} First, Prisoner's argument would force us to accept that being *eligible* for an outcome is the same as being *entitled* to that outcome, despite the absence of any language requiring the granting of an award. Prisoner cites no case law, ours or otherwise, to support an eligibility-as-entitlement theory of liberty interests. And the few cases that are cited refer to circumstances easily distinguished from here. *Templeman v. Gunter*, 16 F.3d 367, 370 (10th Cir. 1994) (holding that the Colorado

12

good-time credit applicable to a prisoner mandated an award (using "shall") only if prison-official discretionary predicates were present); *Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (noting that while the denial of a mandatory credit would deprive a prisoner of a liberty interest, the Colorado earned time credit regime was a prison-official discretionary scheme such that depriving prisoner the opportunity to earn credit did not implicate a protected interest).

{18} Prisoner's argument also conflicts with the common understanding of "eligible." Put simply, "[e]ligibility is not entitlement." *Bellis v. Davis*, 186 F.3d 1092, 1094 (8th Cir. 1999) (internal quotation marks and citation omitted), *aff'd sub nom. Lopez v. Davis*, 531 U.S. 230 (2001). *Black's Law Dictionary* defines *eligible* as "[f]it and proper to be selected or to receive a benefit[, or] legally qualified for an office, privilege, or status." *Eligible*, *Black's Law Dictionary* (12th ed. 2024). Being legally qualified for something does not imply that one is also legally entitled to it. Here, *eligible* means fit and proper to receive an LSA—expressing a potential rather than a realization. In other contexts, like Medicare and Medicaid, courts have interpreted *eligible* to mean "capable of receiving." *Forrest Gen. Hosp. v. Azar*, 926 F.3d 221, 229 (5th Cir. 2019); *Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d 1261, 1264 (9th Cir. 1996) (distinguishing between *eligible*, which means

"capable of receiving," and *entitled*, which "means that one possesses the right or title to that benefit" (internal quotation marks and citation omitted)).

{19} The second issue with Prisoner's argument is that to bridge the definitional gap between *eligible* and *entitled*, Prisoner relies on a bootstrap premise that the silence of the LSA provision prevents post-eligibility review and thus creates an entitlement from eligibility. But while the LSA statute may be silent, the EMDA is not. *State v. Smith*, A-1-CA-35199, mem. op. ¶ 15 (N.M. Ct. App. Nov. 6, 2019) (nonprecedential) ("To earn good time credit, a prisoner must participate in particular programs, maintain good behavior, be recommended for good time credit by a supervisor, and have this credit approved by the warden." (citing § 33-2-34(A), (B), (F))); *State v. Ardrey*, A-1-CA-27396, mem. op. at 4 (N.M. Ct. App. Feb. 9, 2009) (nonprecedential) ("'Even if eligible for a deduction, a prisoner may not earn meritorious deductions unless the recommendation of the classification supervisor is approved by the warden or the warden's designee.'" (emphasis added) (quoting § 33-2-34(B))). The sort of prohibition against post-eligibility review argued by Prisoner is contradicted by the statutory authority granted to the NMCD. Namely, that the Legislature expressly provided final approval powers to the Director of the prison: "All decisions regarding the award . . . of meritorious deductions at [private correctional] facilities are subject to final approval by the director . . . or the

14

director's designee." Section 33-2-34(K).[4] That is to say, in circumstances specific to this case, the Legislature reserved "final approval" authority for specific prison officials. *Id.* Prisoner effectively asks us to amend the EMDA by decision, a request we respectfully deny.

{20} Finally, prohibiting review also seems to conflict with the discretion Subsection (E) affords, that LSAs "*may* be awarded in addition to the meritorious deductions provided in Subsections A and B." Section 33-2-34(E) (emphasis added). If an applicant fulfills the eligibility criteria, Prisoner's reading that eligibility becomes entitlement redrafts this statutory provision by requiring that the LSA *must* be awarded in addition to the meritorious deductions. Prisoner's suggested statutory regime "encas[es] the [post-eligibility] procedures in an inflexible . . . straitjacket." *Wolff*, 418 U.S. at 563.

{21} The State's argument fares no better. The State interprets the EMDA as conferring the NMCD with unfettered discretion, precluding the creation of any liberty interest because there is no substantive limitation on official discretion to

---

[4]At the time of completing RDAP, Prisoner was incarcerated in a private correctional facility, Lea County Correctional Facility, which gives relevance to Subsection (K).

15

approve or deny an LSA. The State's position ignores the mandatory nature of the LSA provision and is not supported by the plain language of the EMDA.

{22} The crux of the State's argument resides in the permissive nature of the EMDA. *See* §§ 33-2-34(B)-(D). Neither the United States Constitution nor the New Mexico Constitution guarantees prisoners good time credit. *Wolff*, 418 U.S. at 557. Nor did the Legislature require that the NMCD establish or maintain a meritorious deduction program. We also agree that the Legislature provided the NMCD with broad discretion to operate the meritorious deduction program if it so chooses. The NMCD enjoys significant decision making powers in such matters as selecting what programs are approved for earning credit and what prisoners to recommend for those programs. *See* §§ 33-2-34(A), (D). Thus, consistent with the State's assertion of NMCD discretion, we acknowledge that there is not a constitutionally protected interest in earning good time credits.

{23} But there is a significant distinction between being denied an opportunity to earn a meritorious deduction and being deprived of further consideration for an award after the NMCD approved a program and then recommended a prisoner for that program, which the prisoner ultimately successfully completed. The cases cited by the State stand only for the proposition that a protected interest is not implicated when the NMCD denies a prisoner the opportunity to earn credits under certain

16

circumstances, such as denials addressed in Section 33-2-34(F) when the prisoner is in administrative or disciplinary segregation. *Brown v. Ulibarri*, 298 F. App'x 746, 749-50 (10th Cir. 2008) (acknowledging that under the EMDA a liberty interest is not implicated when a prisoner is deprived of the opportunity to earn good time credits while in disciplinary segregation); *Fogle*, 435 F.3d at 1262 (holding that under Colorado law a prisoner's due process rights were not violated when he was denied the opportunity to earn credits while in administrative segregation); *Templeman*, 16 F.3d at 370 (same). As these cases illustrate, the EMDA "does not entitle prisoners to earned meritorious deductions. Instead, it gives prison officials *discretion* to allow a prisoner to earn them by actively participating in programs recommended and approved for the prisoner." *Helfferich v. New Mexico*, 1:20-cv-01069-JCH-KK, at 8 (D.N.M. Oct. 26, 2022) (emphasis added).

{24}     However, the NMCD's discretion to approve programs and recommend prisoners to participate in those programs are discretionary predicates that, along with the prisoner's successful completion of the program, entitle a prisoner to further consideration for an LSA. For the State's argument to succeed, the NMCD must have unbridled discretion to deny a prisoner's application post-eligibility. Yet the Legislature chose not to confer the NMCD with such expansive authority. Subsection (B) of the EMDA, cited by the State, applies to all meritorious deductions

17

and cabins the review authority of the Classification Supervisor and the Warden. The provision states, "A prisoner may earn meritorious deductions upon recommendation by the classification supervisor, based upon the prisoner's *active participation* in approved programs and the *quality* of the prisoner's participation in those approved programs." Section 33-2-34(B) (emphasis added). The Legislature restricted the scope of the Classification Supervisor's review to the prisoner's performance in the approved and recommended program. Subsection (B) concludes by stating, "A prisoner may not earn meritorious deductions unless the recommendation of the classification supervisor is approved by the warden or warden's designee." *Id.* The Warden's approval is similarly limited to a review of the substance of the Classification Supervisor's recommendation. The same limitation applies when a private prison is awarding the deduction. Subsection (K) states that in a private prison, the "prisoner . . . is eligible to earn meritorious deductions in the same manner as a prisoner confined in a state-run correctional facility." Section 33-2-34(K). By expressly stating that a prisoner's right to consideration of an award in a private setting is the same as in a public correctional facility, the Legislature ensures mirrored processes are present at both. Section 33-2-34(K); *see also* Section 33-2-34(A). The prison's administrative review and approval allows the NMCD to ensure consistency in the private prison's

18

recommendation as it relates to the prisoner's performance in the NMCD-approved program.

{25}    Our interpretation cabining the NMCD's scope of review does not appear to alter the current review framework of the NMCD. The record shows that Prisoner's LSA application was reviewed and rejected by numerous parties, including the Classification Supervisor (or the Program or Unit Manager), Warden (or Deputy Warden or Contract Monitor), and the Director (or Deputy Director) of Adult Prisons. Our holding does not change this status quo.[5] We comment on the statutory procedures only to acknowledge the express restrictions on the NMCD's review. Once the NMCD approves a prisoner for a program and the prisoner subsequently completes the program, the statute creates a liberty interest in the prisoner's eligibility for the LSA. If prison officials do not deem the prisoner ineligible under one of the statutory disqualifications or a promulgated rule consistent with NMCD authority, then the prison officials' review of the application is limited to the overall quality of the prisoner's participation. Sections 33-2-34(B), (K). Here, Prisoner was

___

[5]While the NMCD rules use slightly different language to describe scopes of review, we do not find it a material change from the statute. *Compare* NMCD CD-082801 § C.16 (stating that the Director's review will include the "case") *with* NMCD CD-082801 §§ C.13-14 (requiring the Classification Supervisor or Program Manager or Unit Manager, followed by the Warden, to review the "packet").

deprived of that protected interest in further consideration. Therefore, we are now charged with determining whether the NMDC "procedures attendant upon that deprivation were constitutionally sufficient." *Thompson*, 490 U.S. at 460.

**C.    NMCD Regulations Did Not Provide Prisoner an Opportunity to Be Heard**

{26}    The touchstone of procedural due process is fairness, protecting individuals against arbitrary deprivations of life, liberty, and property. *Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 1994-NMSC-096, ¶ 23, 118 N.M. 470, 882 P.2d 511 ("Due process requires that the proceedings looking toward a deprivation be essentially fair."); *Wolff*, 418 U.S. at 558 ("We think a person's liberty[, like property,] is equally protected, even when the liberty itself is a statutory creation of the [s]tate."). The Due Process Clause "raises no impenetrable barrier to the taking of a person's possessions, or liberty, or life." *Carey v. Piphus*, 435 U.S. 247, 259 (1978) (internal quotation marks and citation omitted). It does not shield an individual from every deprivation, only those arbitrary deprivations that implicate a constitutionally significant interest. *Id.* ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."). Due process provides its safeguards, in part, by requiring "the government to give notice and an opportunity to be heard before depriving an individual of liberty or property." *Nash v. Bd. of Cnty. Comm'rs of Catron Cnty.*,

20

2021-NMSC-005, ¶ 36, 480 P.3d 842 (internal quotation marks and citation omitted). This essential requirement does not demand a set of formalistic processes. Our case law "instructs that due process is flexible and calls for such procedural protections as the particular situation demands and not all situations calling for procedural safeguards call for the same kind of procedure." *State v. Guthrie*, 2011-NMSC-014, ¶ 11, 150 N.M. 84, 257 P.3d 904 (emphasis, internal quotation marks, and citation omitted). Our inquiry, therefore, must decide whether Prisoner was afforded adequate process for the circumstances when the NMCD deprived him of a constitutionally significant interest.

{27} New Mexico courts apply the three-factor test from *Mathews v. Eldridge*, 424 U.S. 319, 332-33, 335 (1976), to determine whether the administrative procedures employed comport with the Fourteenth Amendment. *See State v. Rotherham*, 1996-NMSC-048, ¶ 51, 122 N.M. 246, 923 P.2d 1131 (noting the *Mathews* test is applied in both civil and criminal contexts); *State v. Cooley*, 2023-NMCA-089, ¶ 31, 538 P.3d 491 (noting that in answering what procedural due process is owed requires "balanc[ing] that interest against the state's interests as guided by the factors in *Mathews*"). An elaboration of the test is unnecessary here because the NMCD regulations prohibited any opportunity to be heard in any form. While the award is a "matter of grace and not of right," the right to be heard is not. *Owens v. Swope*,

21

1955-NMSC-079, ¶¶ 24, 27, 60 N.M. 71, 287 P.2d 605 (discussing the entitlement to parole). We conclude that the NMCD's bar against appeal was constitutionally deficient and that the NMCD must augment its rules consistent with this opinion. We recognize that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources," and so for the moment we leave to the NMCD's expertise, guided by our case law, the implementation of appropriate procedures to provide prisoners with notice and an opportunity to appeal eligibility determinations. *Griffin v. Thomas*, 2004-NMCA-088, ¶ 23, 136 N.M. 129, 95 P.3d 1044 (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)).

{28}   Our holding should not suggest that adhering to procedural safeguards immunizes the NMCD from judicial review. Courts "are not wallflowers or potted plants." *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988). The United States Supreme Court has recognized "that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). Or, as happened here, a due process violation can also occur if the procedures are followed but policies, statutes, or regulations are violated. *Brooks*, 1994-NMSC-113, ¶ 9 (noting that allegations of departure from statutory or

22

administrative procedures may suggest deprivation of a prisoner's right to due process).

{29} The State contends that Prisoner was ineligible for an LSA for RDAP because he already received credit for another program, TC. The NMCD rules state that "[a]n inmate is eligible for only *one* (1) Lump Sum Award *per program listed* in the Programs Approved as Eligible for LSA Consideration table" (emphasis added). The NMCD contends that TC and RDAP were the same program, so that Prisoner was prohibited by NMCD rule to receive an additional award. NMCD's argument might be persuasive if its policies contained such a rule, which they are, of course, required to promulgate. Section 33-2-34(H) ("The [NMCD] shall promulgate rules to implement the provisions of this section."). RDAP was an approved program, and there was no rule or policy announcement that RDAP and TC could not both count towards separate awards. Thus, Prisoner had a liberty interest in eligibility, Prisoner was actually eligible, and the NMCD's denial of eligibility is in violation of its own rules (and is not under one of the statutory exclusions in Section 33-2-34(F)). Because the Due Process Clause is an "essential guarantee of . . . fairness" that protects against arbitrary governmental acts that deprive a prisoner of a liberty interest, such as the eligibility determination in this case, Prisoner's Petition for Writ

of Habeas Corpus should still be granted. *Harrell*, 1994-NMSC-096, ¶ 23. The final question is the propriety of the award.

**D.     The Thirty-Day Award Was an Acceptable Equitable Remedy**

{30}     This Court has recognized that "traditionally the writ [of habeas corpus] provided for an equitable remedy, such that a court has some flexibility in fashioning an appropriate disposition for the circumstances of a particular case." *Perry*, 2012-NMSC-040, ¶ 15 (internal quotation marks and citation omitted). The scope of remedies is not boundless, so district courts "may not ignore statutes, rules, and precedents when fashioning such a remedy." *Lopez*, 2003-NMSC-003, ¶ 17 (citation omitted). In particular, "remedies for constitutional violations should be narrowly tailored and take into account competing interests." *Id.* ¶¶ 21, 23.

{31}     In awarding the thirty-day credit, the district court effectively disallowed further hearings by the NMCD. In *Lopez*, this Court determined that "precluding a new hearing is an *exceptional remedy*, which we believe is *only* appropriate when the trial court is persuaded either that the [NMCD] will not or cannot provide a fair hearing on remand, or that there has been such a pattern of conduct by the Department that a sanction is appropriate." *Id.* ¶ 33 (emphasis added). The *Lopez* Court upheld the district court's decision to restore good time credits without an additional administrative hearing because the district court had noted its concerns

24

about recurrent due process violations. *See id.* ¶¶ 33-34. This case implicates *Lopez*'s alternative justification in that the NMCD cannot provide a fair hearing because its rules currently prohibit appeal. Therefore, granting the award and precluding further NMCD review is an appropriate remedy.

## III.  CONCLUSION

{32}  For the foregoing reasons, we hold that the Legislature created a liberty interest in LSA eligibility when a prisoner successfully completes an approved and recommended program. Because NMCD rules prohibit review of eligibility denials, Prisoner's right to due process was violated, and the district court's award of the thirty-day credit was an appropriate equitable remedy.

{33}  We advise the NMCD to promulgate procedural rules consistent with this opinion.

{34}  **IT IS SO ORDERED.**

_____

**DAVID K. THOMSON, Chief Justice**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Justice**

_____

**C. SHANNON BACON, Justice**

_____

**JULIE J. VARGAS, Justice**

_____

**BRIANA H. ZAMORA, Justice**